STATE OF CONNECTICUT *v.* GARRICK TURNER
(SC 16711)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued September 11, 2003—officially released January 20, 2004

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph Harry*, ·senior assistant state's attorney, for the appellant (state).

*Carlton L. Hume*, with whom were *Tony Jorgensen* and, on the brief, *Tina J. Georgiades*, for the appellee (defendant).

*Opinion*

BORDEN, J. The state appeals, following our grant of certification, from the judgment of the Appellate Court reversing the defendant's conviction, rendered following a guilty plea, of sexual assault in the second degree and risk of injury to a child. The state claims that the Appellate Court improperly concluded that the defendant's guilty plea resulted from ineffective assistance of counsel. We reverse the judgment of the Appellate Court.

The defendant, Garrick Turner, was charged with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1).[1] Prior to trial, the defendant filed a motion

---

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered . . . or the morals of such child are likely to

to suppress a statement that he had made to the police, claiming that he had not been informed of his *Miranda*[2] rights. Following an evidentiary hearing, the trial court, *Turner, J.*, denied the defendant's motion, and the defendant subsequently pleaded guilty to all charges. Thereafter, the defendant filed a motion to withdraw and vacate his guilty plea, claiming that he had received ineffective assistance of counsel. The trial court, *B. Kaplan, J.*, denied the defendant's motion to withdraw his plea and rendered a judgment of conviction in accordance with the guilty plea.

On appeal to the Appellate Court, the defendant claimed that he had been denied due process of law due to ineffective assistance of counsel because his attorney had not informed him of the possibility of entering a conditional plea of nolo contendere pursuant to General Statutes (Rev. to 1999) § 54-94a[3] and Practice Book § 61-6,[4] thereby preserving the right to appeal

be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] General Statutes (Rev. to 1999) § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[4] Practice Book § 61-6 (a) (2) (i) provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's (a) motion to suppress evidence based on an unreasonable search or seizure, (b) motion to suppress statements and evidence based on the involuntariness of a statement, (c) or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper

from the denial of his motion to suppress. The Appellate Court reversed the judgment of the trial court, concluding that, due to ineffective assistance of counsel, the defendant's guilty plea had not been entered knowingly and voluntarily because he had not understood "that a guilty plea, unlike a nolo plea, would waive his right to appeal" from the denial of his motion to suppress. *State v. Turner*, 67 Conn. App. 708, 715, 789 A.2d 1058 (2002). Accordingly, the Appellate Court held that the "[trial] court abused its discretion in denying the defendant's motion to vacate his guilty plea." Id., 715–16. This certified appeal followed.[5]

The underlying facts and procedural history were set forth in the opinion of the Appellate Court. "On March 8, 1998, the defendant went to the Bridgeport police station. His father had received a telephone call the day before from Mark McDaniel, a sergeant, requesting to speak to the defendant. The defendant was eighteen years old, had no prior criminal history and had been living in the United States for only two years. The defendant resided with his father, who, along with the defendant's aunt, accompanied him to the police station.

"At the station, McDaniel questioned the defendant alone. The interrogation lasted about thirty to forty

for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this subsection shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. The court shall not accept a nolo contendere plea pursuant to this subsection where the denial of the motion to suppress would not have a significant impact upon the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere plea where the record available for review of the denial of the motion to suppress or motion to dismiss is inadequate for appellate review of the court's determination thereof."

[5] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the defendant's guilty plea resulted from ineffective assistance of counsel?" *State v. Turner*, 260 Conn. 905, 795 A.2d 546 (2002).

minutes, three to four minutes of which were recorded.[6]

[6] The transcript of the defendant's recorded police interview provides as follows: "Today's date is December 12, 1998. The time is 3:03 P.M. This is Detective McDaniel.

"Q. Can you please state you name?

"A. Garrick Turner.

"Q. How old are you Garrick?

"A. I'm eighteen.

"Q. What's your date of birth?

"A. January 2, 19[80].

"Q. Do you know why you're here today Garrick?

"A. Yeah.

"Q. You know that you're free to leave and you're not under arrest, right?

"A. Yeah.

"Q. And you haven't been coerced or forced to come down here to speak to me at all, have you?

"A. No.

"Q. You want to tell me what your relationship [is] with [the victim]?

"A. Uh, we've been girlfriend and boyfriend.

"Q. For how long?

"A. For a year, almost a year.

"Q. And have you had a relationship with [the victim]?

"A. Yes.

"Q. What exactly do you mean by a relationship? Did you have sex with her?

"A. Yeah.

"Q. When did you have sex with her?

"A. Uh, March.

"Q. March. What year? This year? March of [19]98?

"A. Yeah.

"Q. Where did this occur?

"A. Uh, at my house.

"Q. At your house, where's your house?

"A. Uh, 303 Garfield Avenue.

"Q. Where in the house, in your room, in the living room?

"A. In the bathroom.

"Q. In the bathroom? And, how many times did this happen?

"A. Twice.

"Q. Twice? In the month of March?

"A. Yes.

"Q. Okay. And, have you talked to her since then?

"A. Yeah, I've talked to her since then.

"Q. Did you know how old she was at the time?

"A. Yeah.

"Q. How old was she?

"A. She was fifteen.

McDaniel asked the defendant if he had engaged in sexual intercourse with the victim and [if so] when that had occurred. The defendant responded that he had engaged in sexual intercourse with the victim two times in March, 1998, when the victim was fifteen years old.[7] The defendant was subsequently charged with sexual assault in the second degree and risk of injury to a child.

"Before entering his guilty plea, the defendant filed a motion to suppress his statement to the police, and an evidentiary hearing followed. The defendant's counsel called the defendant as his only witness. The defendant claimed that his statement to the police was inadmissible because he had been interrogated at the police station, under circumstances from which it could be inferred that he was in custody, without having been notified of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

"Q. Fifteen. And, what's your relationship with her now?
"A. Uh, we still talk you know, so, we're still girlfriend and boyfriend.
"Q. When's the last time she called you?
"A. Last night.
"Q. Last night, what time?
"A. Around eight or nine.
"Q. Eight or nine? And what did she say?
"A. She said she was checking up on me, seeing what I was doing.
"Q. Who was home? Was there anyone home when this happened at your house?
"A. I was downstairs on the first floor with my cousin. We were watching tv.
"Q. No, when you had sex with her in March.
"A. Uh, yeah, my cousins were home and my aunts. One of my aunt's [was] home.
"Q. Did they know that you were in the bathroom. How did you get in there without them seeing you?
"A. I just sneaked in.
"Q. Okay. Do you have anything else you'd like to add to this statement?
"A. No, that's it.
"Q. You swear that what you've told me in this statement is the truth?
"A. Yes.
"This statement ends on December 8, 1998. Time is 3:06 P.M."

[7] It is undisputed that, at the time of the sexual intercourse, the victim was less than sixteen years of age and the defendant was more than eighteen years of age.

"At the hearing, McDaniel admitted that he did not read the defendant *Miranda* warnings because the defendant was neither under arrest nor in custody. He testified that he told the defendant several times during the interrogation that he was free to leave and that he was not under arrest.[8] McDaniel further testified that he did not threaten the defendant or pressure him into making his statement. The [trial] court concluded that the defendant failed to sustain his burden of proving that he was in custody at the time of the interview and therefore denied the motion to suppress. Thereafter, the defendant pleaded guilty to the charges of sexual assault in the second degree and risk of injury to a child.[9]

"On June 14, 2000, prior to sentencing, the defendant filed a motion to vacate and to withdraw his guilty plea on the ground that his trial counsel was ineffective in failing to inform him that by pleading guilty, he was waiving his right to appeal from the court's denial of his motion to suppress. See Practice Book § 39-27 (4). The defendant requested the withdrawal of his plea so that he could enter a new plea of nolo contendere in accordance with General Statutes [Rev. to 1999] § 54-94a and thereby preserve his right to appeal from the denial of his motion to suppress. The [trial] court denied the motion to withdraw on the ground that the defen-

---

[8] Although the Appellate Court opinion does not refer to it, the record also discloses that the defendant testified that McDaniel had told him several times that he was free to leave.

[9] The record discloses that the defendant's trial was scheduled to begin shortly because jury selection had already begun at the time of the defendant's plea hearing. In exchange for the defendant's plea of guilty, for which the maximum sentence could have been twenty years imprisonment, the state recommended an effective sentence of ten years imprisonment, execution of which would be suspended after the nine month mandatory minimum, including ten years probation, registration as a sex offender, no contact with the victim, and sexual offender treatment. After the court canvassed the defendant, defense counsel stated that the defendant understood that his plea put him in severe jeopardy, and that he was pleading guilty because of the risk of being sentenced to a longer term of incarceration.

dant had not demonstrated ineffective assistance of counsel.[10] The court sentenced the defendant to a total term of incarceration of ten years, execution suspended after nine months, and ten years conditional probation in accordance with the state's recommended sentence offered pursuant to its [guilty] plea agreement with the defendant. The defendant's appeal [to the Appellate Court] followed." *State* v. *Turner*, supra, 67 Conn. App. 709–11.

On appeal to the Appellate Court, the defendant claimed that his guilty plea had been the result of ineffective assistance of counsel because he had not been informed of his "statutory right" to plead nolo contendere, thereby preserving his right to appeal from the trial court's denial of his motion to suppress. Id., 711.

---

[10] The record also discloses that, in the time between his guilty plea and his sentencing hearing, the defendant retained new counsel. At the sentencing hearing, in support of the defendant's motion to withdraw his plea, the defendant's new counsel represented that he had spoken with the defendant's prior counsel and had learned that the prior counsel had not discussed with the defendant the prospect of entering a plea under § 54-94a because prior counsel believed that appealing the ruling on the motion to suppress would have been frivolous. For that reason, the defendant's counsel argued, the prior counsel's performance had been ineffective because he should have consulted with the defendant regarding the ability to appeal his motion to suppress. In response, the state argued that, even if the defendant had prevailed on his motion to suppress, the state was nonetheless ready to proceed to trial with the victim as its central witness. Thus, in the state's view, § 54-94a was inapplicable to this case because the defendant's appeal would not have been "dispositive" of the case. In reply, the defendant's counsel opined that "we don't know whether or not [the victim] would actually come in and testify." Thus, the defendant's counsel asserted, without the victim's testimony, and without the defendant's statement made to the police, the state's case would have been weak and, therefore, a successful appeal on his motion to suppress would have been dispositive. The trial court denied the defendant's motion, stating that it was familiar with the case and found the prior counsel to have been competent at all times. The court concluded, moreover, that a conditional plea of nolo contendere was inappropriate in this case because the trial was scheduled to begin shortly and the victim was expected to testify, meaning that the defendant's appeal would not have been "dispositive" of the case as required by § 54-94a.

In response, the state claimed that his counsel's failure to inform the defendant of his right to appeal did not amount to ineffective assistance counsel because any appeal from the trial court's motion to suppress would have been frivolous. Id., 714. The Appellate Court concluded that it was "possible that [the defendant] might have prevailed on his claim that his *Miranda* rights were violated because he believed he was in custody due to his inexperience with the criminal system." Id. Accordingly, the Appellate Court held that, because "the defendant had nonfrivolous grounds for an appeal," defense counsel's failure to inform the defendant "of his statutory right to plead nolo contendere" constituted ineffective assistance of counsel in accord with this court's holding in *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 9, 761 A.2d 740 (2000). *State* v. *Turner*, supra, 67 Conn. App. 714. The Appellate Court remanded the case to the trial court "with direction to vacate the guilty plea, to accept the defendant's plea of nolo contendere pursuant to § 54-94a and to render judgment thereon." Id., 716. Additional facts will be presented as necessary.

On appeal to this court, the state claims that the Appellate Court improperly concluded that defense counsel had been ineffective for failing to consult with the defendant about the prospect of entering a conditional plea of nolo contendere under § 54-94a. Specifically, the state argues that, because the defendant was not in custody for *Miranda* purposes, any appeal from the trial court's denial of his motion to suppress would have been frivolous. Thus, the state contends, because the defendant had no nonfrivolous grounds for an appeal, defense counsel was not ineffective for failing to consult with the defendant regarding whatever appellate rights § 54-94a would have preserved. We agree.[11]

---

[11] This conclusion makes it unnecessary to reach the merits of the state's other arguments, namely, that: (1) the defendant has not met his burden of establishing an adequate factual basis to prevail on a claim of ineffective

We first turn to a brief review of the law governing pleas of nolo contendere conditional on the right to appeal as set forth in § 54-94a and Practice Book § 61-6. Central to that review is the notion that, at the time of the trial court proceedings in the present case, a plea of nolo contendere conditioned on the defendant's right to take an appeal was, unlike a guilty plea, subject to the determination of the trial court that its ruling on the motion at issue would "have a significant impact upon the disposition of the case in the trial court. . . ." Practice Book § 61-6 (a) (2) (i); see footnote 4 of this opinion. In this connection, we note that § 54-94a was enacted in 1982 by No. 82-17 of the 1982 Public Acts and has been amended twice; once in 1988 by No. 88-19 of the 1988 Public Acts, and again in 2001 by No. 01-13 of the 2001 Public Acts. Practice Book § 61-6 was originally adopted in 1986 as § 4003, and although the rule was designed to implement the statute, it contains language slightly different from that used in § 54-94a.[12] See footnotes 3 and 4 of this opinion. Because the defendant attempted to withdraw his guilty plea on June 14, 2000, we evaluate his claim in light of the statute and rule of practice as they existed as of that date.

By enacting § 54-94a, the "legislature in 1982 *altered* the broad waiver of constitutional rights implicit in a plea of guilty or nolo contendere . . . . Section 54-94a

assistance of counsel; (2) the defendant did not have a "statutory right" to plead nolo contendere in this case because his appeal from the trial court's denial of his motion to suppress would not have been dispositive of the case and, therefore, trial counsel was not required to inform the defendant of the possibility of entering such a plea; and (3) the Appellate Court improperly concluded that the defendant's guilty plea was neither knowing nor intelligent because the trial court's plea canvass was sufficient as a matter of law.

[12] Of particular relevance to this appeal is the fact that Practice Book § 61-6 (a) (2) (i) added the following additional language, which is not contained in § 54-94a: "The court shall not accept a nolo contendere plea pursuant to this subsection where the denial of the motion to suppress *would not have a significant impact upon the disposition of the case in the trial court.*" (Emphasis added.)

is intended to promote judicial economy by allowing the parties to litigate a suppression or dismissal issue fully in the trial court, and thereafter allowing the defendant to obtain review of an adverse ruling without the parties' or the court's expending additional resources." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Piorkowski*, 236 Conn. 388, 402, 672 A.2d 921 (1996). In 1985, this court interpreted § 54-94a strictly and directed trial courts "not [to] employ this procedural innovation except in situations plainly within [its] provisions . . . ." *State* v. *Madera*, 198 Conn. 92, 102, 503 A.2d 136 (1985). We noted, moreover, that "[t]he conditional plea is susceptible to abuse . . . unless its use is carefully limited to significant issues the determination of which on appeal is *likely to be dispositive of the case.*" (Emphasis added.) Id., 101.

For those policy reasons, Practice Book § 61-6, then § 4003, was adopted in 1986 and limited the scope of § 54-94a by stating, among other things, that a court should not accept the conditional nolo plea if the issue on appeal "would not have a *significant impact upon the disposition of the case* in the trial court." (Emphasis added.) See *State* v. *Piorkowski*, supra, 236 Conn. 416 ("[t]he rule, designed to implement the statute, is more limited than the statute, and cannot be read to expand it"). In *Piorkowski*, however, we rejected the state's contention that " 'significant impact' " was synonymous with "fully dispositive." Id., 414–15. The state had argued in *Piorkowski* that, because Practice Book § 4003, now § 61-6, is patterned after rule 11 of the Federal Rules of Criminal Procedure, conditional pleas are available only "when the decision of the [reviewing] court . . . will dispose of the case either by allowing the [conviction] to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence." (Internal quotation marks omitted.) *State* v. *Piorkowski*, supra, 414. We disagreed, and held that

Practice Book § 4003, now § 61-6, imposed a less stringent standard than does rule 11, although we did not go on to define precisely that standard; rather, we merely stated that "the standard is looser than the state suggests." Id., 420. Thus, at the time the defendant attempted to withdraw his guilty plea in the present case, after *Piorkowski* had been decided in 1996, but before § 54-94a was amended in 2001, a trial court could accept a conditional plea of nolo contendere so long as the issue on appeal would have a significant impact on the outcome of the case.[13]

We next turn to a brief review of the law governing claims of ineffective assistance of counsel. "Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 385, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). *"Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible.* The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency." (Emphasis in original; internal quotation marks omitted.) *State* v. *Colton*, 234 Conn. 683, 697, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

Practice Book § 39-27 (4) provides an explicit exception to this general rule, however, and allows a defendant to withdraw a guilty plea after its acceptance if

---

[13] Section 54-94a was amended in 2001, and explicitly added language requiring that the motion to suppress "be dispositive of the case." Public Acts 2001, No. 01-13. Thus, the standard in place today is stricter than the standard set forth in *Piorkowski*.

the "plea resulted from the denial of effective assistance of counsel . . . ."[14] We recognize, therefore, that the defendant's claim of ineffective assistance of counsel is procedurally correct. Nevertheless, we are mindful that "on the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal . . . we have limited our review" to situations in which "the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." *State* v. *Crespo*, 246 Conn. 665, 688, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). We point out, finally, that irrespective of whether a defendant proceeds by way of habeas corpus or direct appeal, our review is the same, and the burden remains on the defendant to produce an adequate record so that an appellate court may ascertain whether counsel's performance was ineffective.

As the foregoing discussion indicates, in order to establish that the defendant's prior counsel's assistance was ineffective for failing to advise him of the availability of a conditional plea under § 54-94a, the defendant was required to establish, as a threshold factual matter, that the trial court would have accepted such a plea. This, in turn, would have required the defendant to establish that: (1) the victim would not have testified against him; and (2) the denial of his motion to suppress would have had a significant impact on the case. See footnote 10 of this opinion. Although we have doubts about those matters, we assume without deciding that the defendant, in fact, made those requisite showings

---

[14] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

to the trial court.[15] We conclude, nonetheless, that the defendant has failed to establish ineffective assistance of counsel in this case, because the defendant has failed to establish that he had nonfrivolous grounds to appeal from the trial court's denial of his motion to suppress.

It is well settled that claims of ineffective assistance of counsel are governed by the United States Supreme Court's two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a "defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness . . . and (2) that defense counsel's deficient performance prejudiced the defense." (Citation omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 154, 662 A.2d 718 (1995). In the realm of plea negotiations, in order to satisfy the second prong of *Strickland*, namely, proving actual harm, a defendant must show that, but for the counsel's "defi-

---

[15] The dissent acknowledges that the record does not establish that the trial court would have accepted a conditional plea of nolo contendere, yet concludes that such an oversight "does not prevent me from considering whether the failure of the defendant's prior counsel at least to notify the defendant of the possibility of pleading nolo contendere constituted ineffective assistance of counsel." See footnote 2 of the dissenting opinion. As the following discussion makes clear, however, this conclusion ignores a basic maxim regarding claims of ineffective assistance of counsel, namely, that a defendant must establish that counsel's "deficient performance prejudiced the defense." *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Put another way, in order to prevail on a claim of ineffective assistance of counsel, a defendant must show actual harm. In the present case, the defendant is claiming that counsel's performance prevented him from entering a plea under § 54-94a; he has not claimed, as the dissent suggests; see footnote 2 of the dissenting opinion; that he would have pleaded not guilty and gone to trial if a nolo plea had not been available to him. In order to show actual harm, therefore, the defendant must show that, but for counsel's deficient performance, he would have entered a plea under § 54-94a, which, in turn, requires him to show that the court would have accepted such a plea. Without such a showing, the defendant cannot prevail on a claim of ineffective assistance of counsel. Because the dissent fails to undertake that issue, it lacks a fundamental predicate.

cient performance, the outcome of the plea process would have been different." Id., 156.

In the context of whether counsel has a duty to advise a defendant of his right to take an appeal, we are guided by *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 9, in which we held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[16] (Internal quotation marks omitted.) The crux of the defendant's claim is that, because of his counsel's failure to advise him about the possibility of entering a conditional plea of nolo contendere, he was deprived of an opportunity to appeal from the trial court's denial of his motion to suppress. By analogy then, because *Ghant* establishes when counsel has a duty to advise a defendant of his right to appeal, and because § 54-94a preserves, albeit in limited circumstances, a defendant's right to appeal, *Ghant* similarly establishes when counsel has a duty to advise a defendant of the prospect of entering a plea under § 54-94a. In the context of the present case, therefore, the defendant must establish that there were nonfrivolous grounds for an appeal. This requires, moreover, that we define the standard for evaluating the frivolousness of an appeal in this procedural context.

We previously have defined the frivolousness of an appeal in two contexts. First, in the context of whether to impose sanctions on an attorney for filing a frivolous appeal, we adopted the standard set forth in the official

---

[16] This prong of *Ghant* is inapposite to the present case because the defendant has not claimed that he told his counsel that he was interested in appealing.

commentary to rule 3.1 of the Rules of Professional Conduct, which states that an "action is frivolous . . . if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." (Internal quotation marks omitted.) *Texaco, Inc.* v. *Golart*, 206 Conn. 454, 464, 538 A.2d 1017 (1988).

Second, in the context of evaluating whether a court has abused its discretion in denying requests for certification or permission to appeal, we repeatedly have applied the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). See, e.g., *State* v. *James*, 261 Conn. 395, 405–10, 802 A.2d 820 (2002) (denial of state's request for permission to appeal from court's ruling that police lacked probable cause to arrest); *Seebeck* v. *State*, 246 Conn. 514, 534, 717 A.2d 1161 (1998) (denial of request for certification to appeal from denial of petition for new trial); *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994) (denial of petition for certification to appeal from denial of writ of habeas corpus). "The *Lozada* inquiry was established in order to determine whether a petitioner has made the requisite 'substantial showing of the denial of a federal right' for the issuance of the required certificate of probable cause to appeal the denial of federal habeas relief . . . . In *Lozada*, the United States Supreme Court held that the required 'substantial showing' was made if the petitioner 'demonstrate[s] *that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.*' . . . In the federal courts, the probable cause certificate serves the same policy goal as the granting of permission or certification to

appeal does in Connecticut, namely, to screen out frivolous appeals while still protecting the litigants' statutory right to appellate review of adverse determinations." (Citations omitted; emphasis added.) *State* v. *James*, supra, 404.

We first applied the *Lozada* criteria in evaluating the frivolousness of an appeal in *Simms* v. *Warden*, supra, 230 Conn. 616, in which we held that, in an appeal under General Statutes § 52-470 (b), which governs denials of requests for certification to appeal an adverse habeas corpus ruling, "a petitioner will establish a clear abuse of discretion . . . if he can demonstrate the existence of one of the *Lozada* criteria . . . ." We reasoned that, because the legislature had intended to discourage frivolous appeals when it enacted § 52-470, a "habeas appeal that satisfies one of the *Lozada* criteria is not frivolous." Id.

Following our reasoning in *Simms*, we subsequently held that the *Lozada* criteria was the proper standard with which to evaluate an abuse of discretion under General Statutes § 54-95, which governs requests for certification to appeal a denial of a petition for a new trial or writ of error. *Seebeck* v. *State*, supra, 246 Conn. 533–34. In a similar fashion, we held that the *Lozada* criteria was appropriate in evaluating an abuse of discretion in which the state sought permission to appeal under General Statutes § 54-96. *State* v. *James*, supra, 261 Conn. 405–10. Thus, *Simms*, *Seebeck* and *James* make clear that when a petitioner presents an issue on appeal that satisfies any one of the *Lozada* criteria, that petitioner ought to have that issue considered on appeal.

We see no reason why the *Lozada* criteria similarly should not be used for evaluating the frivolousness of an appeal on a defendant's claim, whether by way of habeas corpus or direct appeal via Practice Book § 39-

27 (4), that counsel was ineffective for failing to consult with him regarding an appeal. First, this situation is legally analogous to those in which we already have applied the *Lozada* criteria. If a court has not abused its discretion in denying a petition for certification to appeal because the appeal is frivolous under *Lozada,* then it logically follows that counsel would not be ineffective for failing to inform a defendant of his right to appeal if that appeal would be frivolous. Second, the *Lozada* criteria, as previously discussed, is consistent with our policy of discouraging frivolous appeals, which is equally applicable in this context in which a defendant is seeking relief for counsel's failure to consult about appellate rights. Finally, the standard of frivolousness that was adopted in *Texaco, Inc.,* which deals with attorney misconduct, is inapplicable to the present case because its purpose is to evaluate whether an attorney should be sanctioned, not whether a convicted criminal defendant has been denied an otherwise valid avenue to a judicial appellate remedy.

Bolstering our conclusion is the fashion in which we rejected the petitioner's claims as frivolous in *Ghant.* Indeed, for each of the petitioner's five claims in *Ghant,* we stated the claim, followed by the applicable well settled law, and upon an application of the law to the facts of the case, we concluded that each claim did "not constitute a nonfrivolous ground for appeal." *Ghant* v. *Commissioner of Correction,* supra, 255 Conn. 11–17. In other words, we merely concluded that counsel's performance could not have been ineffective as a matter of law because the petitioner failed to present any claims that established even a remote likelihood of success under those well settled rules of law. Thus, the standard used in *Ghant* very much resembled the *Lozada* criteria, although we did not explicitly say so at the time.

We are mindful that this standard allows counsel some discretion in whether to consult with a defendant about an appeal. Indeed, it presumes that counsel is aware of well settled law and may, in his or her best judgment, decide in which circumstances it is appropriate to pursue an appeal on behalf of his or her client. The opposite conclusion, however, would oblige attorneys to ignore well settled law and common sense in an effort to exhaust a defendant's appellate remedies— all for the singular purpose of avoiding a later claim of ineffectiveness. The *Lozada* set of criteria sets forth a desirable standard in this context, because it balances those situations in which a defendant has been unconstitutionally deprived of a right to present a colorable claim on appeal with those situations in which it is in a defendant's ultimate best interest to end the proceedings sooner rather than later.

Thus, if a defendant can demonstrate either that: (1) the issue is debatable among jurists of reason; (2) a court could resolve the issue in a different manner; or (3) the question is adequate to proceed further, then the defendant's appeal is not frivolous as a matter of law and, therefore, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal" under *Ghant*. (Internal quotation marks omitted.) Id., 9. A defendant, therefore, may prevail on a claim of ineffective assistance of counsel under *Ghant* if he can satisfy any one of the *Lozada* criteria. Once he has done so, he "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, *he would have timely appealed.*" (Emphasis added; internal quotation marks omitted.) Id., 10.

We now turn, therefore, to the question of whether the defendant's claim that his statements should have been suppressed because the police had failed to give him *Miranda* warnings was frivolous. The applicable

law is well settled. "Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. . . . [A]lthough the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Citations omitted; internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 757, 670 A.2d 276 (1996); see also *New York* v. *Quarles*, 467 U.S. 649, 665, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984); *Oregon* v. *Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 711 (1977); *State* v. *Pinder*, 250 Conn. 385, 409, 736 A.2d 857 (1999). "A person is in custody only if, in view of all the surrounding circumstances, a reasonable person would have believed [that] he was not free to leave." (Internal quotation marks omitted.) *State* v. *Pinder*, supra, 409, citing *United States* v. *Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). "Further, the United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. . . . Thus, in determining whether *Miranda* rights are required, *the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest.*" (Citations omitted; emphasis added.) *State* v. *DesLaurier*, 230 Conn. 572, 577, 646 A.2d 108 (1994); *State* v. *Atkinson*, supra, 758; see also *Stansbury* v. *California*, 511 U.S. 318, 321, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994).

The defendant bears the burden of proving that he was in custody for *Miranda* purposes. *State* v. *Pinder*, supra, 250 Conn. 409. Two discrete inquiries are essen-

tial to determine custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." (Internal quotation marks omitted.) Id., 410. The first inquiry is factual, and we will not overturn the trial court's determination of the historical circumstances surrounding the defendant's interrogation unless it is clearly erroneous. Id., 410–11. "The second inquiry, however, calls for application of the controlling legal standard to the historical facts." (Internal quotation marks omitted.) Id., 410. The ultimate determination of whether a defendant was subjected to a custodial interrogation, therefore, "presents a mixed question of law and fact," over which our review is de novo. (Internal quotation marks omitted.) Id.; see also *State* v. *Johnson*, 241 Conn. 702, 719, 699 A.2d 57 (1997) ("historical facts surrounding custody reviewed for clear error; ultimate determination of custody reviewed de novo").

With those well settled principles in mind, we have reviewed the transcript of the defendant's recorded police interview, as well as the transcripts of the suppression hearing and the trial court's ruling thereon. We conclude that, contrary to the defendant's assertion, the defendant's interview with the police cannot, as a matter of law, be construed as a custodial interrogation for *Miranda* purposes.

The following additional facts, as revealed through the case file and transcripts, are necessary to resolve this appeal. At the defendant's suppression hearing, the defendant testified in support of his motion, and McDaniel testified on behalf of the state. The defendant testified that, on the day after his father had received a telephone call from McDaniel, he voluntarily went to the police station accompanied by his father and aunt. He further testified that, upon his arrival at the police

station, McDaniel said that he needed to ask him a few questions concerning the "whole incident," and thereafter, McDaniel accompanied the defendant to a room with a recording device. The defendant testified further that he had been told several times that he was free to leave and that he was not under arrest. The defendant testified, moreover, that McDaniel had not threatened him in any way. McDaniel testified that, while the defendant had been at the police station, he never had been in custody, and he never was placed under arrest. McDaniel further testified that after he had finished asking the defendant questions, the defendant left the police station with his father. An examination of the transcript of the defendant's recorded interview corroborates the testimony of both the defendant and McDaniel. See footnote 6 of this opinion.

We note that neither party disputes the underlying facts surrounding the defendant's interview. The parties' sole disagreement regarding the defendant's interrogation is whether he was "in custody" when he made his statements to police.

The defendant's contention that he was entitled to *Miranda* warnings in the present case is foreclosed by such cases as *Oregon* v. *Mathiason*, supra, 429 U.S. 494–96, *State* v. *Pinder*, supra, 250 Conn. 412–13, and *State* v. *Atkinson*, supra, 235 Conn. 759–61. In those cases, each of the defendants' claims that they were in custody failed because each voluntarily had gone to the police station and each had been free to leave at any time. In other words, because there had not been "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest," the defendants in those cases, like the defendant in the present case, were not entitled to *Miranda* warnings. (Internal quotation marks omitted.) *State* v. *Atkinson*, supra, 757.

In *Mathiason*, for example, the defendant was the only suspect in a burglary investigation and he agreed

to meet the investigating officer at the state patrol office to answer some questions. *Oregon* v. *Mathiason*, supra, 429 U.S. 493. The defendant was told that he was not under arrest and he was led to a closed office. Id. After being advised that he was believed to have been involved in the burglary, the defendant admitted that he had taken the property. Id. The officer then gave the defendant *Miranda* warnings and took a taped confession. Id., 493–94. At the end of the taped conversation, the defendant was told he was not yet under arrest, and he then left the police station. Id., 494. Noting that the defendant voluntarily had gone to the police station, that he had been told that he was not under arrest, and that he left the station after the interview, the United States Supreme Court held that *Miranda* warnings had not been required because the defendant had not been in custody "or otherwise deprived of his freedom of action in any significant way." (Internal quotation marks omitted.) Id.

In *Pinder*, the defendant had agreed to take a polygraph test after police had become suspicious about inconsistencies in his previous interview. *State* v. *Pinder*, supra, 250 Conn. 392. The defendant had been told that he was not required to take the polygraph test and that he could leave at any time. Id., 394. We held that the defendant had not been in custody at any time during his questioning because he took the test of his own volition and he repeatedly was told that he was free to leave at any time. Id., 412–13.

Finally, in *Atkinson*, detectives investigating a murder questioned the defendant at the police station in a closed room about an unrelated robbery. *State* v. *Atkinson*, supra, 235 Conn. 753–54. When the questioning turned to the murder, however, the defendant was given *Miranda* warnings and later he implicated himself in the murder. Id., 754. The defendant moved to suppress his entire statement—the portions given

both before and after he had been given *Miranda* warnings—claiming that he had been in custody throughout the interrogation. Id., 755–56. We held that the defendant was *never* in custody. Id., 760–61. Noting that the defendant voluntarily had gone to the police station, that he had not been handcuffed or arrested, and that he had been free to leave at any time, we stated that "the concerns of *Miranda* are not implicated in this case." Id., 760. Accordingly, we held "that a reasonable person in the defendant's situation would not have believed that his movement was restricted to a degree that is associated with a formal arrest . . . ." Id., 760–61.

This court has stated several times, moreover, that it is realistic to assume "that a reasonable person would feel free to leave when that person was told repeatedly that he could do so." *State* v. *Pinder,* supra, 250 Conn. 413; see, e.g., *State* v. *Greenfield,* 228 Conn. 62, 71 n.10, 634 A.2d 879 (1993) ("an important factor distinguishing a consensual encounter from a seizure is whether the police expressly informed the defendant that he was free to leave at the outset of the interview"); *State* v. *Northrop,* 213 Conn. 405, 415, 568 A.2d 439 (1990) ("[i]t is difficult to conceive of a 'reasonable man' who would not feel free to leave after having been told so many times and in so many different ways that he could"); see also *State* v. *Lapointe,* 237 Conn. 694, 726, 678 A.2d 942 ("[g]iven the defendant's freedom of movement about the police station and the fact that he had been repeatedly told that he was free to leave, we conclude that the defendant was not in custody"), cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996).

In the present case, the defendant voluntarily went to the police station. He was told several times that he was not under arrest. He was told several times that he was free to leave at any time, and, in fact, he did leave as soon as McDaniel had finished questioning him.

The defendant was not threatened in any way. Given that the present case is legally indistinguishable from those previously discussed, coupled with the clear state of the law in this area, we conclude that, as a matter of law, the defendant has failed to establish that he had nonfrivolous grounds for an appeal. The issue presented by the defendant is not debatable among jurists of reason, it could not reasonably have been resolved differently, and it does not raise questions deserving further appellate scrutiny. Accordingly, the defendant's claim on appeal is frivolous because it does not satisfy any of the *Lozada* criteria. Because we have concluded that the defendant's claim on appeal is frivolous, counsel was not required to consult with the defendant regarding a conditional plea of nolo contendere under § 54-94a. Thus, the defendant's claim of ineffective assistance of counsel fails under *Ghant*.

The defendant argues, nonetheless, that, as the Appellate Court noted; *State* v. *Turner*, supra, 67 Conn. App. 714; when taking into account his youth and unfamiliarity with the legal system, a court could have inferred that the defendant was "in custody" because he had felt that he was not free to leave. We disagree.

As previously discussed, when determining whether a *reasonable person* would have felt that he or she was free to leave, courts are to apply an *objective*, rather than a subjective, standard. See *State* v. *DesLaurier*, supra, 230 Conn. 577. "[T]he initial determination of custody depends on the objective circumstances of the interrogation, *not on the subjective views harbored by either the interrogating officers or the person being questioned.*" (Emphasis added.) *Stansbury* v. *California*, supra, 511 U.S. 323. Thus, in the present case, it is irrelevant that the defendant may have been a novice to police questioning. His subjective beliefs about whether he was in fact free to leave have no bearing on whether he was in custody for *Miranda* purposes.

It is also irrelevant that the defendant was questioned under McDaniel's assumption, based on the victim's sworn statement, that he had committed the crime. *"[T]he only relevant inquiry* is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest." (Emphasis added.) *State* v. *Des-Laurier*, supra, 577.

The defendant argues that an appellate court could determine that he was in custody based on the "confinement and the restrictive setting in which [the defendant] was interrogated." We disagree.

The mere fact that the defendant's interview took place behind closed doors at the police station does not entitle the defendant to *Miranda* warnings. Indeed, the interrogations in both *Mathiason* and *Atkinson*, both of which fell short of "custodial interrogations," took place in almost factually identical conditions to those in the present case. As the United States Supreme Court noted in *Mathiason*, "a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that . . . the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system [that] may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and

to which it is limited." (Emphasis in original.) *Oregon* v. *Mathiason*, supra, 429 U.S. 495.

It is important to note that our use of the *Lozada* criteria in this context does not imply that an appeal that is merely likely to be unsuccessful on the merits is necessary frivolous. On the contrary, we simply hold that, when the law is clear and well settled in a particular area, as it is in the present case, and the case would require only the application of that well settled law to undisputed or virtually undisputable facts, an appeal would be frivolous within the meaning of *Ghant*.

Finally, we are aware that it may seem paradoxical that we have concluded that the issue presented by the defendant was neither debatable among jurists of reason, nor reasonably could have been resolved differently; yet the Appellate Court came to a different conclusion. This is explainable, however, because the Appellate Court apparently applied a less stringent standard of frivolousness than that required by the *Lozada* criteria, which we had yet to apply in this context. The Appellate Court, moreover, improperly applied a subjective, rather than an objective, test for determining whether the defendant was in custody.[17] We are confi-

---

[17] Much the same may be said of the dissent in the present case. The dissent focuses on a combination of factors to conclude that jurists of reason could disagree about whether the defendant was in custody. Specifically, these factors are: his age; his unfamiliarity with our criminal justice system; his presence in this country for two years; the fact that he was being asked questions about a crime; and the fact that his having voluntarily gone to the police station was prompted by his choice to avoid embarrassment in front of his peers and teachers at school. Suffice it to say that this constellation of factors turns what both the United States Supreme Court and this court repeatedly have stated is an objective test into a subjective test. Under the dissent's approach, the question is not whether a reasonable person in the defendant's position would believe that he was in police custody to the degree associated with a formal arrest; *State* v. *DesLaurier*, supra, 230 Conn. 577; but whether *this defendant* was likely to have believed that he was in custody to such a degree.

Furthermore, each of the cases on which the dissent relies for the proposition that the age of the defendant ought to be taken into account for determin-

dent that, had the Appellate Court properly applied the

ing custody, involved a defendant who was a juvenile under the laws of the applicable jurisdiction. See *Alvarado* v. *Hickman*, 316 F.3d 841, 843 (9th Cir. 2002), cert. granted sub nom. *Yarborough* v. *Alvarado*, 539 U.S. 986, 124 S. Ct. 45, 156 L. Ed. 2d 703 (2003) (seventeen year old defendant was juvenile under California law); *State* v. *Savory*, 105 Ill. App. 3d 1023, 1029, 435 N.E.2d 226 (1982) (fourteen year old defendant was juvenile under Illinois law); *State* v. *Smith*, 546 N.W.2d 916, 926 (Iowa 1996) (fifteen year old defendants were juveniles under Iowa law); *In re L.M.*, 993 S.W.2d 276, 278 (Tex. App. 1999) (eleven year old defendant was juvenile under Texas law). By contrast, the defendant in the present case was for legal purposes an adult, over the age of eighteen; see General Statutes § 1-1d (defining age eighteen as age of majority); and, therefore, more than two years beyond juvenile status. Compare General Statutes § 46b-120 (1) (defining " 'child' " as under age sixteen for purposes of delinquency prosecution). Indeed, had the defendant been a juvenile in the present case, his confession would have been inadmissible unless: (1) a parent was present during the interview; and (2) he and his parent had been advised of his right to counsel and his right to remain silent. General Statutes § 46b-137 (a).

The only cases relied on by the dissent that did not involve juvenile defendants are *People* v. *Horn*, 790 P.2d 816, 818 (Colo. 1990) (describing test for custody as "whether a reasonable person in the suspect's position would believe that he is deprived of his freedom of action in any significant way"), and *State* v. *Zancauske*, 804 S.W.2d 851, 859 (Mo. App.) (defendant was in custody because police already had enough evidence to make arrest, thereby making defendant focus of their suspicion), cert. denied, 502 U.S. 817, 112 S. Ct. 73, 116 L. Ed. 2d 47 (1991). Both cases, however, are simply out of step with the overwhelmingly prevailing jurisprudence that the United States Supreme Court, and this court, have adopted regarding the proper test for custody. We note, moreover, that *Horn* and *Zancauske* were decided three and four years, respectively, before the Supreme Court decided *Stansbury* v. *California*, supra, 511 U.S. 318, in which it reiterated that the requisite degree of restraint must be " 'of the degree associated with a formal arrest' "; id., 322; and that "whether interrogating officers have focused their suspicions upon the individual being questioned . . . is not relevant for purposes of *Miranda*." Id., 326.

In addition, all of the cases relied on by the dissent are factually dissimilar. Without belaboring the point, a careful examination of all of those cases discloses significant factual differences from the facts found in the present case.

In sum, application of the "jurists of reason" test must be applied with some level of discrimination. Simply because there may be a few cases from other jurisdictions, however legally or factually dissimilar, that have reached different results, does not mean that we must ignore our own, and the United States Supreme Court's, repeated statements of the applicable law to the contrary.

*Lozada* criteria and applicable *Miranda* principles to the present case, it likewise would have concluded that an appeal in the present case would have been frivolous.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment of conviction.

In this opinion KATZ, PALMER and VERTEFEUILLE, Js., concurred.

SULLIVAN, C. J., dissenting. The majority in the case presently before us concludes that, because reasonable jurists could not conclude that the defendant was in custody at the time of his interrogation, the failure of his attorney to apprise him of the opportunity to appeal if he entered a conditional plea of nolo contendere does not give rise to a claim of ineffective assistance of counsel. I first conclude that the majority adopts an inappropriate standard for the evaluation of frivolous appeals. In addition, I believe that, even utilizing the standard that the majority adopts, reasonable jurists could disagree about the outcome of the forgone appeal. Accordingly, I respectfully dissent.

In the present case, the defendant, Garrick Turner, was an eighteen year old high school student who had been living in the United States for only two years and had never been arrested before his arrest in connection with this case. While investigating a complaint of sexual assault, a police detective called the father of the defendant and asked to speak with the defendant. The defendant testified that the police detective told him that he should come to the police station in order to avoid the embarrassment of the police coming to his school. The next day, the defendant, along with his father and his aunt, went to the police station. At the station, the defendant was taken to an interrogation room. There, he was interrogated by a single police officer. Although

the defendant was told that he was free to leave, he was also asked questions implicating him in a crime and was told that the police were gathering evidence with respect to the crime. It is undisputed that the defendant was never told that he had a right to remain silent and a right to counsel and that his statements could be used against him.

The majority first sets forth a review of the law governing pleas of nolo contendere conditional on the right to appeal that applied at the time the defendant attempted to withdraw his appeal. The majority correctly notes that, at the time of the trial court proceedings in the present case, in order for the trial court to accept the defendant's plea of nolo contendere conditional on the right to appeal, that court would have had to find that its ruling on the defendant's motion to suppress would have had a significant impact on the disposition of the case at trial. See footnote 4 of the majority opinion. The rules of practice also required the trial court to find, before accepting the plea, that the record was adequate for appellate review. Practice Book § 61-6 (a) (2) (i). Although the majority acknowledges that the trial court's ruling denying the defendant's motion to suppress need not be fully dispositive of the case, but only have a significant impact on the outcome, the majority also concludes that in order to find that the trial court would have accepted a plea of nolo contendere conditional on the right to appeal, it would have required the defendant "to establish that: (1) the victim would not have testified against him; and (2) the denial of his motion to suppress would have had a significant impact on the case."[1]

---

[1] It is unclear to me why the majority would conclude that the defendant would need to establish that the victim would not have testified against him. As the majority acknowledges, the trial court's denial of the motion to suppress need not be dispositive of the case, but only have a significant impact on the outcome. Thus, in my opinion, even if the victim testified, in the absence of a confession from the defendant, and any medical or scientific evidence, the trial would become a much weaker case from the standpoint

Subsequently, assuming without deciding that the defendant made the requisite showings to the trial court so that it would have accepted the plea, the majority properly sets forth our review of claims of ineffective assistance of counsel.[2] Specifically, the majority notes

of the state. Accordingly, even if the victim testified in this case, the denial of the defendant's motion to suppress would still have had a substantial impact on the case.

[2] The majority concludes that my analysis is incomplete because the record leaves doubt as to whether the trial court even would have accepted a nolo contendere plea. Although the trial court indicated that such a plea was inappropriate in this case; see footnote 10 of the majority opinion; in fact the trial court apparently utilized an improper standard. As the majority opinion states: "The [trial] court concluded, moreover, that a conditional plea of nolo contendere was inappropriate in this case because the trial was scheduled to begin shortly and the victim was expected to testify, meaning that the defendant's appeal would not have been '*dispositive*' of the case . . . ." (Emphasis added.) Footnote 10 of the majority opinion. As noted previously in this dissent, pursuant to the rules in effect at the time of the trial court's statement, the denial of the defendant's motion to suppress must have had only a substantial impact on the outcome of the proceedings at the trial court.

More fundamentally, the very reason that we do not know whether the trial court would have accepted a conditional plea of nolo contendere if it had been proffered prior to the defendant's pleading guilty is that the court was never asked to do so. Put differently, the failure of the defendant's prior counsel to notify the defendant of the possibility of the plea and to inquire of the trial court whether a conditional nolo contendere plea would be accepted is exactly what is being claimed as ineffective assistance of counsel. I cannot conceive how any fact finder could determine at this point whether the trial court would have accepted the plea if it had been offered at the appropriate time and the trial court had been apprised of the appropriate standard for accepting it. Thus, although the record does not establish conclusively that the trial court would have accepted a nolo contendere plea, it does not prevent me from considering whether the failure of the defendant's prior counsel at least to notify the defendant of the possibility of pleading nolo contendere constituted ineffective assistance of counsel.

Moreover, the majority misapplies the prejudice requirement as set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As the Appellate Court has recognized, "[f]or ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong." (Internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 80 Conn. App. 96, 99, 832 A.2d 1210 (2003). In *Hill*, the United States Supreme Court stated that, in such cases,

this court's decision in *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 9, 761 A.2d 740 (2000), in which we concluded that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." (Internal quotation marks omitted.) From this, the majority concludes that, in order to prevail on appeal on his claim of ineffective assistance of counsel, the defendant must establish that there were nonfrivolous grounds for an appeal from the trial court's denial of his motion to suppress.

As a result of this conclusion, the majority sets forth two tests that this court has utilized to define the frivo-

the focus is "on whether counsel's constitutionally ineffective performance affected the outcome of the *plea process*. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Emphasis added.) *Hill* v. *Lockhart*, supra, 59. Therefore, the defendant's required showing of actual harm is satisfied by evidence of a reasonable probability that, but for the ineffective assistance of counsel, the defendant would not have pleaded guilty.

Thus, in my view, the defendant should not be required to show that, "but for counsel's deficient performance, he would have entered a plea under [General Statutes] § 54-94a, which, in turn, requires him to show that the court would have accepted such a plea." See footnote 15 of the majority opinion. It is clear to me that there was at least a reasonable probability that the defendant in the present case would not have pleaded guilty but for his prior counsel's failure to notify him of the possibility of pleading nolo contendere. I also believe that there is at least a reasonable probability that, if the court had refused to accept the defendant's nolo contendere plea, the defendant would have insisted on going to trial in order to preserve his right to appeal. Specifically, the defendant subsequently attempted to withdraw that guilty plea after he acquired new counsel. Accordingly, I would conclude that the defendant has satisfied the second prong of *Strickland*, as modified by *Hill*. Consequently, contrary to the majority's assertion, a fundamental predicate indeed exists for the review of the defendant's ineffective assistance of counsel claim.

lousness of an appeal. The first, taken from the commentary to rule 3.1 of the Rules of Professional Conduct, states that an action is frivolous "if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." See *Texaco, Inc.* v. *Golart*, 206 Conn. 454, 464 n.7, 538 A.2d 1017 (1988). The second definition of frivolousness, and the one the majority ultimately adopts, requires the person moving for an appeal to demonstrate that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) This language is taken from the United States Supreme Court's per curiam decision in *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), which concluded that the United States Court of Appeals for the Ninth Circuit improperly denied the issuance of a certificate of probable cause required for an appeal from the denial of federal habeas corpus relief.

As the majority explains, this court has utilized the *Lozada* test in prior cases involving the frivolousness of appeals. For example, in *State* v. *James*, 261 Conn. 395, 409, 802 A.2d 820 (2002), this court adopted the *Lozada* test in order to provide a framework within which to determine whether a trial court abused its discretion when it denied the state's request to appeal pursuant to General Statutes § 54-96. In *James*, we noted that "[t]he *Lozada* inquiry already provides us with well marked guideposts for the exercise of trial court discretion in two other *areas of appeals requiring permission or certification to appeal*." (Emphasis added.) Id., 404. In those prior cases, the *Lozada* test

again provided a framework within which to review a claim that was subject to an abuse of discretion standard. For instance, in *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994), we concluded that the *Lozada* test applied to the denial of a request for certification to appeal from an adverse habeas corpus determination pursuant to General Statutes § 52-470 (b). In addition, we have concluded that the *Lozada* test applied to the review of the denial of petitions for certification to appeal the denial of a request for a new trial. *Seebeck* v. *State*, 246 Conn. 514, 534, 717 A.2d 1161 (1998).

In all of those cases, however, the right to appeal was subject to the permission of the trial court. Thus, our review centered around whether the trial court abused its discretion when it denied the party the right to appeal. In the present case, however, once the trial court has accepted a plea of nolo contendere, the trial court's permission was not required in order to appeal. Instead, the defendant who pleads nolo contendere conditional on the right to appeal may appeal to challenge the denial of a motion to suppress *as a matter of statutory right*. See General Statutes (Rev. to 1999) § 54-94a ("[w]hen a defendant . . . enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . the *defendant after the imposition of sentence may file an appeal within the time prescribed by law*" [emphasis added]). Put differently, although the decision whether to *accept the plea* is subject to the trial court's discretion, the actual appeal that results from that decision is a matter of statutory right. Accordingly, it is simply not appropriate to utilize the *Lozada* test when evaluating the frivolousness of an appeal that the defendant would be entitled to file as a result of the acceptance of a plea of nolo contendere conditioned on a right to appeal.

Instead, I would adopt the standard this court adopted in *Texaco, Inc.* v. *Golart,* supra, 206 Conn. 464. Thus, the appeal in the present case would have been frivolous if "the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer [was] unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." (Internal quotation marks omitted.) Id., 463–64 n.7.[3] Indeed, this court reaffirmed the use of this standard recently in *Schoonmaker* v. *Lawrence Brunoli, Inc.,* 265 Conn. 210, 254–55, 828 A.2d 64 (2003), in which we concluded that the standard explicated in *Texaco, Inc,.* was the standard by which this court reviews a claim that a prevailing party was entitled to attorney's fees as a result of another party's bringing a frivolous action.

My conclusion that the less stringent standard of frivolousness should apply also finds support within the context of the defendant's claim. The definition employed by the Rules of Professional Conduct exists in order to evaluate attorney conduct and to provide a basis for sanctions for bringing a frivolous appeal. Consequently, it is entirely reasonable that the question of whether attorneys have engaged in ineffective assistance of counsel because they failed to notify their clients of nonfrivolous grounds for appeal should be answered by resort to the rules detailing the attorneys' conduct. Put another way, because in this case we are looking to the attorney's conduct, namely, whether the

---

[3] Good faith is defined by Black's Law Dictionary as: "[h]onesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry. An honest intention to abstain from taking any unconscientious advantage of another, even through technicalities of law, together with absence of all information, notice, or benefit or belief of facts which render transaction unconscientious. . . ." Black's Law Dictionary (6th Ed. 1990).

attorney engaged in ineffective assistance of counsel, the standards governing our review should be the rules prescribing that conduct. Additionally, the rules prescribing the attorney's conduct define what constitutes a frivolous appeal, specifically, as it applies to this case, one that is not grounded in a good faith argument. The standard of frivolousness, then, should originate within the context of the attorney's conduct and what they could be sanctioned for, rather than within the context of a review of the trial court's discretion in allowing an appeal to go forward.

Because I would have concluded that good faith grounds for an appeal existed in the present case, I believe that counsel for the defendant engaged in ineffective assistance of counsel by failing to inform the defendant of his right to appeal if he had pleaded nolo contendere subject to a right to appeal. Specifically, the defendant's challenge to the trial court's finding of no custody with respect to his *Miranda* claim constituted a good faith basis for an appeal, and, therefore, the defendant's prior counsel should have informed him of that ground for appeal before the defendant pleaded guilty to the crimes with which he was charged.

Even under the standard that the majority adopts, however—namely, whether the issues are debatable among jurists of reason, or a court could resolve the issues in a different manner, or the questions deserve encouragement to proceed further—I would conclude that the determination of whether the defendant was in custody for *Miranda* purposes would not have constituted a frivolous appeal. The majority properly sets forth the standard that we utilize when determining whether a person is in custody for *Miranda* purposes. Specially, as the majority states: " 'A person is in custody only if, in view of all the surrounding circumstances, a reasonable person would have believed [that] he was not free to leave.' (Internal quotation marks

omitted.) *State* v. *Pinder*, [250 Conn. 385, 409, 736 A.2d 857 (1999)] . . . ." (Citation omitted.) The majority also properly explains that " 'the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest.' " I, however, disagree that the reasonable and objective test cannot take into account the defendant's status as an eighteen year old high school student who had recently immigrated to this country and had no prior experience with our legal system.[4]

Numerous cases conclude that the age of the defendant should be taken into account when determining whether a juvenile would reasonably believe he was not free to leave a police interrogation. Specifically, the United States Court of Appeals for the Ninth Circuit recently concluded that the determination of "custody" for *Miranda* purposes can take into account the defendant's status as a juvenile. In *Alvarado* v. *Hickman*, 316 F.3d 841, 844 (9th Cir. 2002), cert. granted sub nom. *Yarborough* v. *Alvarado*, 539 U.S. 986, 124 S. Ct. 45, 156 L. Ed. 2d 703 (2003), the habeas petitioner, who was seventeen years old at the time of the crime, had been convicted of second degree murder and attempt to commit robbery. The conviction was based primarily on a statement the petitioner gave to the police while being interviewed with respect to the crime. Id.

---

[1] I find curious the majority's characterization of this dissent as applying a subjective rather than objective test. See footnote 17 of the majority opinion. Specifically, I do not question the majority's conclusion that courts are to apply an objective test rather than a subjective standard when determining whether a suspect was in custody for *Miranda* purposes. My belief, however, is that anyone in the defendant's position similarly would feel as though he was not free to leave, *because of* such factors as his age and his inexperience with the legal system. Thus, I am not declaring that, because the *defendant* felt he could not leave he was in custody for *Miranda* purposes, which would indeed be applying a subjective test. Rather, in my opinion, a reasonable person, *when in the defendant's position*, would not have felt that he was free to leave the police station.

In *Alvarado*, while investigating a murder, the police contacted the petitioner's mother at work and informed her that they needed to speak with her son. Id. The petitioner's mother told the police that she and the petitioner's father would bring the petitioner to the police station. Id. While at the police station, the petitioner's parents were denied permission to be present during the interview. Id. The court also pointed out that the petitioner had never been questioned by the police before and had no prior criminal history. Id. The interview with the petitioner lasted approximately two hours, during which the petitioner was never given and did not waive his *Miranda* rights. Id. The petitioner first denied involvement in the murder. The detective then informed him that she did not believe his statements and that she had witnesses who said " 'quite the opposite.' " Id. The petitioner thereafter began to divulge details of the murder and his role in hiding the murder weapon. Id. During the interview, the detective hinted to the petitioner that he would be going home after the interview. Id. The petitioner's statement to the police was introduced as evidence at his trial. Id.

The District Court denied the habeas petition, and on appeal, the state relied on *Oregon* v. *Mathiason*, 429 U.S. 492, 493–95, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977), to claim that, because the petitioner was not under arrest, voluntarily went to the police station and was allowed to leave after the interview, he was not in custody and, therefore, his *Miranda* rights did not attach. *Alvarado* v. *Hickman*, supra, 316 F.3d 846–47. The Circuit Court distinguished *Mathiason* on several grounds. First, the court noted, the defendant in *Mathiason* went to the police station voluntarily and was told immediately that he was not under arrest. Id., 847. In *Alvarado*, the court determined, arrangements for the police interview were made by the petitioner's parents, and the petitioner was never told that he was not under arrest.

Id. Second, while the interview in *Mathiason* lasted only thirty minutes, the interview in *Alvarado* lasted two hours, and the petitioner repeatedly had denied his involvement. Id. Third, the suspect in *Mathiason*, as a parolee, had experience in the criminal justice system. As the Ninth Circuit pointed out, in *Alvarado*, "[the petitioner] had no prior experience with the police." Id.

The Ninth Circuit acknowledged that both the petitioner and the state had constructed their arguments regarding the custody status of the petitioner under an objective standard. Id., 848. The court explained, however, that the petitioner's "status as a minor is an important subsidiary issue that potentially alters the constitutional analysis." Id. The court noted that under the United States Supreme Court's due process jurisprudence, a criminal defendant's age "has long been a relevant factor in determining whether a confession or a waiver of a constitutional right was voluntary." Id.

The court in *Alvarado* additionally relied on *In re Gault*, 387 U.S. 1, 42–43, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), to conclude that the petitioner's juvenile status could be taken into account when determining custody. *Alvarado* v. *Hickman*, supra, 316 F.3d 849. In *In re Gault*, supra, 55, the United States Supreme Court stated: "If counsel was not present for some permissible reason when an admission was obtained, *the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or adolescent fantasy, fright or despair.*" (Emphasis added.) The court in *Alvarado* relied on that language to explain that "if a juvenile is more susceptible to police coercion during a custodial interrogation than would be a similarly situated adult, there is no reason why the same juvenile would not similarly be less capable of determining whether he was, in fact, in custody in the first place." *Alvarado* v.

*Hickman,* supra, 849–50. Considering other factors[5] as well as the age of the petitioner in the objective determination of custodial status, the court concluded that they did not believe a reasonable seventeen year old in the petitioner's position would have felt "at liberty to terminate the interrogation and leave." (Internal quotation marks omitted.) Id., 851; see also *People* v. *Savory,* 105 Ill. App. 3d 1023, 1028, 435 N.E.2d 226 (1982) (factors involved in determination regarding custodial status include: location, time, length, mood and mode of interrogation; number of police officers present; presence or absence of friends or family of accused; any indicia of formal arrest; manner in which person questioned got to place of interrogation; whether suspect voluntarily assists police in their investigation; whether subject is allowed to walk within and from location of interrogation unaccompanied by police; and *"the age, intelligence and mental makeup of the accused"* [emphasis added]); *State* v. *Smith,* 546 N.W.2d 916, 923 (Iowa 1996) (holding that "it is appropriate to consider the age of the defendants as an additional factor in making a determination as to custody status").[6]

Additionally, although the majority relies in part on the fact that the defendant was told that he was free to leave the interrogation, that fact is not dispositive

---

[5] The other factors considered by the court included "[1] the language used by the officer to summon the individual, [2] the extent to which he or she is confronted with evidence of guilt, [3] the physical surroundings of the interrogation, [4] the duration of the detention and [5] the degree of pressure applied to detain the individual." (Internal quotation marks omitted.) *Alvarado* v. *Hickman,* supra, 316 F.3d 846.

[6] See also *In re L.M.,* 993 S.W.2d 276, 289 (Tex. App. 1999) ([S]tandard for determining whether juvenile is in custody is "whether, based upon the objective circumstances, a reasonable child of the same age would believe her freedom of movement was significantly restricted. Our holding does not conflict with the standard applied in earlier Texas cases, but expressly provides for consideration of age under the reasonable-person standard established in *Stansbury* [v. *California,* 511 U.S. 318, 322–24, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994)].").

of the question of custodial status. See *People* v. *Horn*, 790 P.2d 816, 818–19 (Colo. 1990) (custody found where interrogation was "accusative from the outset" and stating that "[a]lthough the defendant was repeatedly told that he was free to leave and that he would not be arrested that day, he was also confronted with the evidence against him and informed that charges would be filed against him regardless of his interview responses").

Although I acknowledge that the defendant in this case was eighteen years old at the time of the interrogation, I see no difference in kind between a seventeen year old murder suspect and an eighteen year old high school student who has no experience with the criminal justice system and has lived in this country for only two years. In the present case, while the defendant was told that he was free to leave, he contemporaneously was being asked questions that implicated him in a crime and was told he was there for the police to "gather evidence" about a crime. Moreover, although this court previously has found that there is no custody when a defendant voluntarily goes to the police station,[7] here, the defendant was told he would be "better off" if he went to the station. Consequently, although technically the defendant voluntarily traveled to the station, it was a result of the threat of embarrassment in front of his peers and teachers at school. Under these circumstances, I believe that reasonable jurists could disagree over whether a reasonable person in the defendant's position would have believed that he was free to leave the interrogation.

Accordingly, I respectfully dissent.

---

[7] But see *State* v. *Zancauske*, 804 S.W.2d 851 (Mo. App.) (although defendant voluntarily traveled to police station, he was in custody for *Miranda* purposes), cert. denied, 502 U.S. 817, 112 S. Ct. 73, 116 L. Ed. 2d 47 (1991).