# JAMES X. GHANT *v.* COMMISSIONER OF CORRECTION
## (SC 16256)

Borden, Katz, Palmer, Sullivan and Vertefeuille, Js.

1

Argued May 31—officially released November 28, 2000

*Jo Anne Sulik*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *David I. Cohen*, supervisory assistant state's attorney, for the appellant (respondent).

*James B. Streeto*, deputy assistant public defender, for the appellee (petitioner).

*Opinion*

VERTEFEUILLE, J. The principal issue in this appeal is whether under either the United States constitution or the constitution of Connecticut, counsel for a criminal defendant is required to inform the defendant of the right to appeal when the defendant has been convicted after pleading guilty. The respondent, the commissioner of correction (commissioner), appeals from the judgment of the habeas court restoring the appellate rights of the petitioner, James X. Ghant, due to his trial counsel's failure to advise him of his right to appeal.

The petitioner filed a petition for a writ of habeas corpus alleging ineffective assistance of counsel in several respects, including his trial counsel's failure to advise the petitioner of the right to appeal from the judgment of conviction after his guilty plea. The habeas court concluded that the petitioner's trial counsel was

required to inform him of his appellate rights and that counsel's failure to do so prejudiced the petitioner by depriving him of his right to appeal. The habeas court therefore restored the petitioner's right to appeal. Pursuant to General Statutes § 52-470 (b), the commissioner appealed to the Appellate Court from the judgment of the habeas court and, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We reverse the judgment of the habeas court.

The following brief procedural history is necessary for an understanding of this appeal. On June 2, 1988, the petitioner was charged with murder in violation of General Statutes § 53a-54a.[1] Following a hearing, the trial court found probable cause for the charge of murder. Subsequently, pursuant to a plea agreement with the state, the petitioner entered a plea of guilty to the charge of murder under the *Alford* doctrine.[2] The state agreed to a sentence of thirty years incarceration while allowing the petitioner the right to argue for a lesser sentence. On March 29, 1989, the petitioner was sentenced to a total of thirty years incarceration. The petitioner is currently serving that sentence in the custody of the commissioner.

The habeas court found the following facts concerning the petitioner's legal representation. On the day of the probable cause hearing, the petitioner's counsel filed an appearance as a special public defender on behalf of the petitioner. Between the date of the proba-

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) ("[a]n individual accused of crime can voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime").

ble cause hearing and the date of entering the plea, counsel met with the petitioner several times to discuss the charges and the evidence. The petitioner maintained that he was not involved in the crime. After conducting an investigation and participating in two pretrial conferences, counsel was offered a disposition by the state that called for a thirty year sentence with a right to argue for a lesser sentence. Counsel recommended this disposition to the petitioner, because, as counsel testified, " 'there was really no evidence to support the denial of his involvement.' " The state had at least one eyewitness, as well as an incriminating statement that the petitioner had made to his cousin. The petitioner ultimately accepted the plea bargain.

On February 1, 1989, the petitioner entered a plea of guilty to the charge of murder under the *Alford* doctrine. At the hearing on the plea and before accepting the plea, the trial court canvassed the petitioner, and found that there was a factual basis for the plea and that it was made " 'knowingly, intelligently and voluntarily with a full understanding of the crimes charged, their possible penalties, [and] after adequate and effective assistance of counsel.' "

From the time that the plea was accepted until the time of sentencing, the petitioner did not discuss a withdrawal of his guilty plea with counsel. In addition, from the time that the guilty plea was entered until the hearing on the habeas petition, counsel and the petitioner never discussed the petitioner's right to appeal. Several years after the conviction, however, the petitioner's sister contacted counsel to discuss withdrawing the petitioner's plea. Counsel advised the petitioner's sister to contact the official court reporter, obtain a copy of the transcript of the plea canvass and hire another lawyer.

Thereafter, the petitioner filed this petition for a writ of habeas corpus, which was subsequently amended.

The amended petition contained four claims for relief, one of which is relevant to the certified issue before this court. The petitioner alleged that he was deprived of his statutory right to appeal and his due process rights in that he had not been informed of the right to appeal from the judgment of conviction.[3]

After a hearing, the habeas court concluded: "Because the court never informed the petitioner at his sentencing that he had the right to appeal, it was counsel's obligation, as a reasonably competent defense attorney, to make sure the petitioner was fully informed of his rights. Because counsel failed to do so, the petition[er] was unable to take advantage of his rights and file a timely appeal. . . . Thus, counsel's deficiencies prejudiced the petitioner by depriving him of his entire right to appeal. The petitioner has met his burden of establishing that he was prejudiced by counsel's deficient performance." (Citation omitted.) Accordingly, the habeas court restored the petitioner's appellate rights. Pursuant to § 52-470 (b),[4] the commissioner filed

[3] The other three claims raised in the petition for a writ of habeas corpus, but irrelevant to this appeal, are that: (1) the petitioner received ineffective assistance of trial counsel; (2) the trial court failed to advise the petitioner of his constitutional right to testify at trial, failed to inform the petitioner of the statutory elements of the charged offense, failed to conduct an adequate inquiry to ensure the petitioner's plea was knowing, intelligent and voluntary, and failed to conduct a sufficient inquiry under *Alford*; and (3) the petitioner was deprived of his right to sentence review and due process rights in that the trial court and the court clerk did not inform the petitioner of his right to sentence review. The habeas court rejected the first two claims, and granted relief on the third. None of these rulings is before us in this appeal.

[4] General Statutes § 52-470 provides in relevant part: "Summary disposal of the case. Appeal by person convicted of crime. . . .

"(b) No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

a petition for certification to appeal the habeas court's decision, which was granted by the habeas court. This appeal followed.

## I

The commissioner contends that the habeas court improperly determined that the sixth amendment[5] right to effective assistance of counsel mandates that a reasonably competent defense attorney inform a criminal defendant of the right to appeal from a guilty plea. The commissioner posits that counsel is obligated to provide such advice only when either the defendant specifically asks about his appellate rights or when the circumstances show that the defendant would have benefited from such advice. We agree with the commissioner.

When reviewing the decision of a habeas court, the facts found by the habeas court "may not be disturbed unless the findings were clearly erroneous." *Copas* v. *Commissioner of Correction,* 234 Conn. 139, 152, 662 A.2d 718 (1995). The issue, however, of "[w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington,* [466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." *Copas* v. *Commissioner of Correction,* supra, 152–53.

## A

After the initial briefs of both parties were filed in this case, the United States Supreme Court decided *Roe* v. *Flores-Ortega,* 528 U.S. 470, 120 S. Ct. 1029, 145 L.

[5] The sixth amendment to the United States constitution is applicable to the states through the due process clause of the fourteenth amendment. *Gideon* v. *Wainwright,* 372 U.S. 335, 342–44, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (applying sixth amendment right to counsel).

Ed. 2d 985 (2000). In *Roe*, the Supreme Court decided an issue nearly identical to that which is presented in this appeal, thus resolving a split of authority among the federal and state courts on the issue. *Roe* has clarified the applicable standard of review under the federal constitution in the determination of whether counsel is ineffective in failing to apprise a defendant of the right to appeal from a guilty plea. The Supreme Court held that, in such a case, counsel has a constitutional obligation to advise a defendant of appeal rights when either (1) the defendant has reasonably demonstrated to counsel his or her interest in filing an appeal, or (2) a rational defendant would want to appeal under the circumstances. Id., 480.

In *Roe*, the defendant pleaded guilty to second degree murder. Id., 473. At his sentencing hearing, the trial judge advised the defendant that he had sixty days within which to file his appeal. Id., 474. His counsel wrote the notation, " 'bring appeal papers' " in her file, but no notice of appeal was filed within the appeal period. The defendant subsequently attempted to file an appeal. Id. Because the time limit to appeal had lapsed, however, his attempt was rejected. He thereafter unsuccessfully sought state habeas relief. The defendant then filed a habeas petition in the federal District Court, alleging ineffective assistance of counsel in violation of the sixth amendment to the federal constitution based on his attorney's failure to file a notice of appeal after promising to do so. Id.

The District Court denied the habeas relief, but the Court of Appeals for the Ninth Circuit reversed, holding that the defendant was entitled to relief, provided that he could show that counsel's failure to file the appeal was without the defendant's consent. Id., 475–76. The United States Supreme Court reversed the judgment of the Court of Appeals, rejecting a bright line rule that counsel, after consulting with the defendant regarding

an appeal, must file a notice of appeal unless the defendant instructs otherwise. Id., 478.

The Supreme Court began its decision in *Roe* with a review of *Strickland* v. *Washington,* supra, 466 U.S. 687, in which the court had held that criminal defendants have a sixth amendment right to "reasonably effective" legal assistance. Under *Strickland,* a defendant claiming ineffective assistance of counsel must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness"; id., 688; and (2) counsel's deficient performance prejudiced the defendant in that there was a reasonable probability that the result of the proceeding would have been different. Id., 694.

The Supreme Court in *Roe* then further articulated that "this [*Strickland*] test applies to claims, like [the defendant's in *Roe*], that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe* v. *Flores-Ortega,* supra, 528 U.S. 477. "[N]o particular set of detailed rules for counsel's challenged conduct can satisfactorily take account of the variety of circumstances faced by defense counsel. . . . Rather, courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . and [j]udicial scrutiny of counsel's performance must be highly deferential . . . ." (Citations omitted; internal quotation marks omitted.) Id., quoting *Strickland* v. *Washington,* supra, 466 U.S. 689–90.

The court in *Roe* began its analysis with the first part of the *Strickland* test and enunciated the rule to be applied to ineffective assistance claims concerning the failure to take an appeal. "In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by

not filing a notice of appeal is best answered by first asking . . . whether counsel in fact consulted with the defendant about an appeal. We employ the term 'consult' to [mean] . . . advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. . . . And, while States are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented . . . the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." (Citations omitted.) *Roe* v. *Flores-Ortega*, supra, 528 U.S. 478–79; see also *Strickland* v. *Washington*, supra, 466 U.S. 688.

Rejecting a bright line test that would require counsel *always* to consult with a defendant regarding an appeal, the court in *Roe* stated: "We . . . hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate

that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." (Citation omitted.) *Roe* v. *Flores-Ortega*, supra, 528 U.S. 480.

The second part of the *Strickland* test, as enunciated in *Roe*, requires the defendant to show prejudice from counsel's deficient performance. Id., 481. "[T]o show prejudice [when counsel fails to apprise a defendant of his or her appellate rights], a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id., 484. The court further articulated that "whether a given defendant has made the requisite showing will turn on the facts of a particular case. . . . [E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination."[6] (Citation omitted.) Id., 485.

## B

After oral argument of this appeal, we ordered the parties to file supplemental briefs to address whether the petitioner might prevail under the test established in *Roe*, specifically, whether (1) a rational defendant

---

[6] The court in *Roe* noted, however, "that it is unfair to require an indigent, perhaps pro se, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal. Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed." *Roe* v. *Flores-Ortega*, supra, 528 U.S. 486.

would have wanted to appeal, or (2) the petitioner reasonably demonstrated to counsel that he was interested in appealing.[7] See id., 480. In his supplemental brief, the petitioner contends that his counsel had a constitutionally imposed duty to consult with him because there was reason to think that a rational defendant would have wanted to appeal because there were nonfrivolous grounds for appeal.[8] The petitioner identifies five grounds for appeal that he claims are nonfrivolous.

First, the petitioner claims that the plea canvass did not adequately ensure that he knowingly, voluntarily and intelligently had waived his constitutional right to testify. During the plea canvass, the trial court asked the petitioner if he understood that he was giving up his right to a trial, his right to remain silent and his right to confront accusers. The court also asked whether he had any questions about his constitutional rights.[9] The trial court did not inquire whether the defendant under-

---

[7] Our order for supplemental briefing provides as follows: "Under *Roe* v. *Flores-Ortega*, [supra, 528 U.S. 480], 'counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.' In this case, because the [petitioner] entered a plea of guilty, the issues that he reasonably might have raised on direct appeal are limited by the record of the guilty plea proceeding. Moreover, the [petitioner] already has had the opportunity to litigate his claims challenging the validity of his guilty plea in the habeas court. In those circumstances, what is the specific basis for the [petitioner's] claim that he may prevail under the test established by *Flores-Ortega*?"

[8] In his supplemental brief, the petitioner did not claim that he reasonably had demonstrated to counsel that he was interested in appealing. The petitioner's failure to brief this issue constitutes abandonment of that issue. See *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991).

[9] The trial court asked the petitioner the following questions during the plea canvass:

"The Court: . . . [Y]ou understand that you're giving up your right to a trial by court or a jury? . . .

"Your right to remain silent? . . .

stood that he was giving up his right to testify. We acknowledge that a criminal defendant's right to testify on his or her own behalf is constitutionally protected. See *State* v. *Paradise*, 213 Conn. 388, 404–405, 567 A.2d 1221 (1990). This court has rejected, however, an argument that a trial judge has "an affirmative duty to canvass the defendant to ensure that his waiver of his right to testify is knowing, voluntary, and intelligent." Id.[10] Therefore, the trial court's failure to establish that the petitioner's waiver of his right to testify was knowing, intelligent and voluntary does not constitute a nonfrivolous ground for appeal.

The petitioner's second contention is that his waiver of his right to a jury trial was inadequate and therefore presents a nonfrivolous ground for appeal. He claims that the trial court judge advised him only that he had a right to trial, but never established that the petitioner could choose between a jury and court trial. Further, the petitioner claims that the judge never explained what constitutes a jury trial.

Under *Boykin* v. *Alabama*, 395 U.S. 238, 242–43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), a trial court is required to inform a defendant that a guilty plea is a waiver of the right to a jury trial. This court has held, however, "that the trial court's express mention of waiver of the right to trial, combined with the defendant's prior election for a jury trial, [the defendant's]

"Your right to confront your accusers? . . .

"Your right to present evidence on your own behalf?

\* \* \*

"Anything you have any questions about—your constitutional rights? You understand that you're giving up those?"

The petitioner answered "yes" to each of these questions and indicated that he had no questions regarding his constitutional rights.

[10] Although *Paradise* involved a defendant's decision not to testify at his trial, the petitioner in the present case cites no authority that imposes a different duty on a trial judge to ensure that a defendant's waiver of his right to testify is knowing, voluntary and intelligent when he pleads guilty.

experience with the criminal proceedings and apparently adequate representation by counsel, satisfy the constitutional requirement." *State* v. *Badgett*, 200 Conn. 412, 420, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). In the present case, the trial court repeatedly asked the petitioner if he understood that he was giving up his right to a trial; twice the court specifically referred to a jury trial.[11] In addition, the petitioner previously had elected a jury trial, and at the time of his guilty plea, he withdrew his prior election of a jury trial. The trial court also ensured that the petitioner had spoken with his counsel and that the petitioner was satisfied with his counsel's advice. This plea canvass therefore clearly satisfied the requirements set forth in *Badgett*. The petitioner urges this court to adopt a more stringent requirement for jury trial waivers based upon cases from jurisdictions other than Connecticut. We decline, however, to mandate more stringent requirements for jury trial waivers in plea canvasses. Therefore, the trial court's failure to obtain an explicit waiver of the petitioner's right to a jury trial does not constitute a nonfrivolous ground for appeal.

The petitioner next claims that his plea canvass was inadequate because it failed to establish that he understood the precise nature of an *Alford* plea, thus constituting a nonfrivolous ground of appeal. Specifically, the petitioner claims that because he was young, poorly educated, had little experience with the criminal justice

---

[11] During its plea canvass, the trial court asked the petitioner the following questions:

"The Court: And you believe that if the jury believed [the] evidence that [the state] has, it's probable you'd be found guilty; is that right? . . .

"And you've decided then after discussing this with [the petitioner's trial counsel], it's to your best interest to plead guilty under *Alford* . . . rather than go through with a trial of your case; is that right? . . .

"[Y]ou understand that you're giving up your right to a trial by [the] court or a jury?" The petitioner responded affirmatively to all the questions.

system and was facing serious criminal charges, the trial court's failure to establish that he understood the implications of an *Alford* plea was a ground for an appeal. We disagree. The trial court did inquire into the petitioner's understanding of an *Alford* plea during the plea canvass.[12] In addition, "the trial court's failure to inquire as to the petitioner's understanding of the meaning of an *Alford* plea does not constitutionally invalidate his plea." *Tyson* v. *Warden*, 24 Conn. App. 729, 735, 591 A.2d 817, cert. denied, 220 Conn. 909, 597 A.2d 340 (1991). Therefore, the trial court's failure to establish that the petitioner understood the precise nature of his *Alford* plea does not constitute a nonfrivolous ground for appeal.

The petitioner's fourth claim is that a nonfrivolous ground for appeal exists because the factual basis of the plea did not satisfy the elements of the crime with which he had been charged. Specifically, the petitioner claims that the state's recitation of the facts included no facts supporting a finding of the intent necessary for

---

[12] During the plea canvass, the following colloquy took place:

"The Court: . . . I understand you're pleading guilty under the doctrine of *Alford* . . . ?

"[The Petitioner]: Yes.

"The Court: And your lawyer has explained that to you . . . . I understand that you're pleading under *Alford* . . . and, although you're pleading guilty, you do not admit all or some of the factual claims set forth by the state; is that correct?

"[The Petitioner]: Yes. . . .

"The Court: . . . Now, you've heard [the assistant state's attorney] describe the facts of the case; is that right . . . ?

"[The Petitioner]: Yes.

"The Court: Do you believe, based on the evidence you know is available to the state and the advice that you've received from your lawyer, it's probable you would be found guilty after trial on the charges for which you're pleading? Do you understand that question?

"[The Petitioner]: Yes.

"The Court: And you believe that if the jury believed [the] evidence that [the state] has, it's probable you'd be found guilty; is that right?

"[The Petitioner]: Yes."

the crime of murder. We do not agree. At the petitioner's plea canvass, the assistant state's attorney stated that the petitioner "walked up to the driver's side of the [victim's] vehicle, pulled a handgun and shot the . . . victim causing his death." The trial court stated that it was "satisfied based on what I've heard of the facts, that an adequate factual basis exists for [the petitioner's] plea to enter under *Alford* . . . ." This court has held that "state courts are under no constitutionally imposed duty to establish a factual basis for a guilty plea prior to its acceptance unless the judge is put on notice that there may be some need for such an inquiry." *State* v. *Niblack*, 220 Conn. 270, 281, 596 A.2d 407 (1991). The entry of an *Alford* plea is not sufficient to put the court on notice that it is necessary to establish a factual basis for a guilty plea. Id., 281–82. A sufficient factual basis is established, however, if the court reasonably can find that the requisite intent existed. Id., 282. In the present case, the trial court reasonably could have found the intent necessary for the crime of murder from the fact that the petitioner had walked up to the victim's vehicle, pulled out a handgun and shot the victim, thereby killing him. Therefore, the factual basis for the petitioner's plea was adequate and does not constitute a nonfrivolous ground for appeal.

The petitioner's final claim is that his plea was not knowing, intelligent and voluntary because no explanation of the charged offense appears on the record of the plea canvass and that this constitutes a nonfrivolous ground of appeal. We do not agree. In the present case, the petitioner had notice of the charges he faced. During the plea canvass, the trial court informed the petitioner of the maximum and minimum penalties for the crime of murder, ascertained that the petitioner had discussed his case with his counsel and was satisfied with his counsel's advice and also asked the petitioner if he understood the nature of the crime. In conclusion, the

court asked whether the petitioner had any questions.[13] The petitioner's trial counsel also testified at the habeas trial that he had explained the elements of murder to the petitioner. The habeas court credited that testimony.

In order for a plea to be voluntary, it is necessary for the defendant to have "real notice of the true nature of the charge against him . . . ." *Smith* v. *O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 85 L. Ed. 859 (1941). It is, however, "appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976); *Oppel* v. *Meachum*, 851 F.2d 34, 38 (2d Cir. 1988); see *Oppel* v. *Lopes*, 200 Conn. 553, 557, 512 A.2d 888 (1986). In this case, counsel for the petitioner explained the elements of murder to the petitioner and the trial court specifically ascertained that the petitioner understood the nature of the offense. Therefore, the failure of the plea canvass to recite the elements of the charged offense does not constitute a nonfrivolous ground for appeal.

The petitioner has failed to show that there existed any nonfrivolous grounds for appeal from his conviction.[14] As a result, we conclude that the petitioner's trial

---

[13] At the plea canvass, the following colloquy occurred:

"The Court: Now, do you have any questions about anything? Anything you have any questions about—your constitutional rights? You understand that you're giving up those?

"[The Petitioner]: Yes. I have no question.

"The Court: Nature of the crime. Do you understand that?

"[The Petitioner]: Yes.

"The Court: All right. You have no questions?

"[The Petitioner]: No questions."

[14] The petitioner claims in a footnote in his supplemental brief that "the plea canvass contains several other defects not presented to the habeas court." We decline to consider these additional claims because they were not briefed and therefore are deemed abandoned. See *State* v. *Tatum*, 219 Conn. 721, 742, 595 A.2d 322 (1991).

counsel had no reason to think that a rational defendant would have wanted to appeal, and, therefore, counsel was not constitutionally mandated to consult with the petitioner about an appeal under the standard announced in *Roe*.

## II

The petitioner contends, in the alternative, that we can nonetheless affirm the restoration of his right to appeal on the ground that the right to appeal is guaranteed by the Connecticut constitution. In his habeas petition, the petitioner alleged a violation of "due process of law under the state and federal constitutions." The petitioner failed, however, to brief or argue his claim under the state constitution before the habeas court. See *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 415–16, 589 A.2d 1214 (1991); see also *Safford* v. *Warden*, 223 Conn. 180, 190 n.12, 612 A.2d 1161 (1992). "Our review of this claim, therefore, is limited to either plain error review; see Practice Book § [60-5]; or review pursuant to the constitutional bypass doctrine of *Evans-Golding*. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).[15] The [petitioner] failed, however, to request review of this claim under either of these doctrines. . . . [I]t is not appropriate to engage in a level of review that is not requested." *State* v. *Hermann*, 38 Conn. App. 56, 64–65, 658 A.2d 148,

---

[15] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). Accordingly, we decline to review this unpreserved claim.[16]

That portion of the judgment of the habeas court restoring the petitioner's right to appeal is reversed and the case is remanded to that court with direction to render judgment denying that portion of the petition.

In this opinion the other justices concurred.

---

[16] Although we do not reach the merits of the petitioner's state constitutional claim, we point out that this court has held that "[t]he due process provisions of the state and federal constitutions generally have the same meaning and impose similar constitutional limitations." *Keogh* v. *Bridgeport*, 187 Conn. 53, 59–60, 444 A.2d 225 (1982).