ADAM DUPERRY *v.* THOMAS A. KIRK, JR.,
COMMISSIONER OF MENTAL HEALTH
AND ADDICTION SERVICES
(AC 25566)

Dranginis, Flynn and Hennessy, Js.

Argued April 21—officially released August 2, 2005

*Sabrina Glaser,* certified legal intern, with whom were *Brett Dignam* and, on the brief, *Robert A. Solomon* and *Cynthia Merrill,* certified legal intern, for the appellant (petitioner).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's

attorney, and *Jo Anne Sulik,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DRANGINIS, J. In this appeal from the denial of a petition for a writ of habeas corpus, the petitioner, Adam DuPerry, claims that the habeas court improperly granted the motion for summary judgment filed by the respondent, Thomas A. Kirk, Jr., commissioner of mental health and addiction services. Contrary to the petitioner's claims, we conclude that (1) he was not denied due process of law because the right to an appeal is not of constitutional magnitude and (2) he was not denied the effective assistance of counsel because there was no reason to think that rationally he would have wanted to appeal from the judgment of acquittal due to mental disease or defect that he had sought rather than go to prison or that, if informed of the right to appeal, he timely would have appealed. We therefore affirm the judgment of the habeas court.

I

PRIOR FACTUAL AND PROCEDURAL HISTORY

The origin of this appeal dates to April, 1988, when the petitioner "was arrested and charged with arson in the first degree in violation of General Statutes § 53a-111 and manufacture of bombs in violation of General Statutes § 53-80a in connection with the explosion of a pipe bomb at the Institute of Living in Hartford. Dennis O'Toole, an assistant public defender, was appointed to represent the petitioner. O'Toole engaged in plea negotiations with Kevin McMahon, then the assistant state's attorney assigned to the case, who offered to recommend a sentence of thirty-five years incarceration suspended after twelve years in exchange for a guilty plea.

"In light of the petitioner's background of mental illness and the nature of the crime charged, O'Toole had the petitioner examined by Walter A. Borden, a psychiatrist, to evaluate the petitioner's mental health and, thus, determine whether a defense of mental disease or defect was viable. After examining the petitioner, Borden concluded that at the time of the alleged offense, the petitioner had suffered from severe mental illness, which significantly impaired his ability to appreciate the wrongfulness of his actions and to conform his conduct to the requirements of the law. O'Toole shared the results of Borden's evaluation with McMahon, who requested that the petitioner be examined by another psychiatrist, Donald R. Grayson. Following his examination of the petitioner, Grayson ultimately also concluded that at the time of the alleged offense the petitioner was suffering from severe mental illness and lacked the capacity to appreciate the wrongfulness of his actions and to conform his conduct to the law. In light of these evaluations, McMahon agreed to not oppose a plea of not guilty by reason of mental disease or defect, and O'Toole agreed to waive a jury trial and to not contest the state's prima facie case regarding the underlying charges.

"On December 20, 1988, the petitioner pleaded not guilty by reason of mental disease or defect and opted for a court trial, which began immediately. In accordance with their prior discussions, the parties presented their respective cases without opposition. First, the parties presented evidence with respect to the petitioner's mental state, and, second, the state introduced evidence regarding the underlying charges. The entire proceeding was completed in less than two hours, and the trial court immediately rendered its judgment, finding the petitioner not guilty by reason of mental disease or defect. Following the petitioner's acquittal, the trial court [*Corrigan, J.*] ordered, pursuant to General Stat-

utes § 17a-582, that the petitioner be committed to the custody of the psychiatric security review board (board) to be confined in a hospital for psychiatric disabilities for a maximum term of twenty-five years.

"In 1995, the petitioner filed a petition for a writ of habeas corpus attacking his continued detention in the custody of the board. The petitioner alleged that his confinement was illegal because, first, he was no longer mentally ill, and, second, he had been denied the effective assistance of counsel when he elected to pursue the defense of not guilty by reason of mental disease or defect. The habeas court, *Hodgson, J.*, found no merit in either claim and dismissed the petition. In 1998, the petitioner filed a motion to open the judgment of the habeas court to present additional claims. The motion was granted and the petitioner amended his petition to allege, inter alia, that: (1) his plea of not guilty by reason of mental disease or defect violated his due process rights under both the federal and state constitutions because he was not made aware of and did not fully understand the consequences of his plea; and (2) his waiver of his right to a jury trial was not knowing and voluntary.

"After an evidentiary hearing, the habeas court, [*Hon. Daniel F. Spallone*, judge trial referee], concluded that the petitioner had proven his allegations by a fair preponderance of the evidence. The court concluded, first, that [t]he requirements governing the taking of a guilty plea also apply to the acceptance of a plea [of] not guilty by reason of mental disease or defect . . . . [T]he habeas court concluded that the petitioner had not, at the time of his plea, understood the consequences of pleading not guilty by reason of mental disease or defect, thereby rendering his plea involuntary. The habeas court further concluded that the petitioner did not waive his right to a jury trial knowingly and voluntarily because the record was devoid of any evi-

dence demonstrating that the trial court had conducted the required canvass of the petitioner to ensure that he knowingly and voluntarily had waived that right. Accordingly, the habeas court rendered judgment granting the petition." (Internal quotation marks omitted.) *Duperry* v. *Solnit*, 261 Conn. 309, 312–16, 803 A.2d 287 (2002).[1] Our Supreme Court reversed the judgment of the habeas court; id., 317; because the habeas court improperly established a new constitutional rule in a collateral proceeding in contravention of the principle announced in *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). *Duperry* v. *Solnit*, supra, 318.

Although it reversed the judgment of the habeas court, our Supreme Court continued its inquiry regarding the issue of the trial court's canvass of a defendant who pleads not guilty by reason of mental disease or defect. "We deem it appropriate, in light of concerns of fundamental fairness, to consider the substance of this issue pursuant to our supervisory authority for the purpose of providing guidance to trial courts *in future cases*." (Emphasis added.) Id., 326–27.

"It is well established that a defendant who pleads guilty waives important constitutional rights, namely the right against self-incrimination, the right to confront

---

[1] For reasons unknown, only a few pages of the proceedings before Judge Corrigan survive. The transcript of the petitioner's plea on December 20, 1988, however, reveals the following:

"The Clerk: Adam DuPerry, you've been charged . . . with the crime of arson in the first degree . . . . How do you plead? Guilty or not guilty?

"[The Petitioner]: Not guilty.

"The Clerk: And how do you wish to be tried? By the court or a jury?

"[The Petitioner]: The judge.

"The Clerk: . . . [Y]ou've been charged . . . with the manufacture of bombs . . . . How do you plead? Guilty or not guilty?

"[The Petitioner]: . . . Not guilty.

"The Clerk: How do you wish to be tried? By the court or jury?

"[The Petitioner]: The judge."

one's accusers, and the right to a jury trial. . . . It is equally well established that a guilty plea and its inherent waiver of rights violates due process unless it is knowing and voluntary. . . . Although a guilty plea and a plea of not guilty by reason of mental disease or defect are not synonymous, the practical similarities between the two are significant. . . . As the Second Circuit Court of Appeals noted in *Miller* [v. *Angliker*, 848 F.2d 1312, 1319 (2d Cir.), cert. denied, 488 U.S. 890, 109 S. Ct. 224, 102 L. Ed. 2d 214 (1988)]: 'A plea of not guilty by reason of insanity resembles the plea of guilty in several significant respects, as it waives important trial rights belonging to the defendant, including his right to argue that he did not perform the acts with which he is charged, his right to [cross-examine] . . . the State's witnesses . . . and his right to introduce any other evidence tending to create a doubt that he actually performed the acts charged.' " (Citations omitted.) *Duperry* v. *Solnit*, supra, 261 Conn. 327–28.

Our Supreme Court then held that *"in all future cases* in which a defendant pleads not guilty by reason of mental disease or defect, and the state substantially agrees with the defendant's claim of mental disease or defect, with the result that the trial essentially is not an adversarial proceeding, the trial court must canvass the defendant to ensure that his plea is made voluntarily and with a full understanding of its consequences. The scope of the canvass should be similar to that of the canvass prescribed by Practice Book § 39-19 for a defendant who pleads guilty. Specifically, the canvass must, at a minimum, establish that the defendant enters his plea with the knowledge that: (1) he is waiving his right to a jury trial; (2) he is waiving his right not to incriminate himself; (3) he is waiving his right to confront the witnesses against him; (4) he is exposing himself to the possibility of commitment to the jurisdiction of the board and of confinement in a hospital for psychi-

atric disabilities; (5) he must remain committed during any term of commitment imposed by the trial court unless the court finds that the defendant is a person who should no longer be committed and orders his discharge; (6) the maximum term of commitment ordered by the court can be equal to the maximum sentence that could have been imposed if the defendant were convicted of the offense, with a statement of that actual sentence; and (7) any term of commitment imposed by the trial court may be extended, potentially for an indefinite duration, as a result of a civil commitment proceeding pursuant to General Statutes § 17a-593." (Emphasis added.) *Duperry* v. *Solnit*, supra, 261 Conn. 329.

Our Supreme Court also concluded that Judge Spallone improperly concluded that the petitioner had not waived his right to a jury trial knowingly and voluntarily. The Supreme Court agreed with the respondent's argument that "the petitioner's claim regarding his jury trial waiver procedurally was barred by his failure to raise the claim prior to the habeas proceeding, and the habeas court improperly concluded that the petitioner had met the cause and prejudice standard for procedural default announced in *Wainwright* v. *Sykes*, [433 U.S. 72, 90–91, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)]." *Duperry* v. *Solnit*, supra, 261 Conn. 330.

The court stated: "In *Wainwright* v. *Sykes*, supra, 433 U.S. [90–91], the Supreme Court held that a petitioner who raises a constitutional claim for the first time in a habeas proceeding must show: (1) cause for the procedural default, i.e., for the failure to raise the claim previously; and (2) prejudice resulting from the alleged constitutional violation. In the absence of such a showing, a court will not reach the merits of the claim. We adopted this standard for state habeas proceedings in *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991).

"The petitioner's argument confuses the issue of whether his *plea* claim procedurally was barred with the issue of whether his *jury trial waiver* claim procedurally was barred. Although the petitioner's reasoning plausibly may have some merit with respect to whether his *plea* claim could meet the cause and prejudice standard . . . that same reasoning is not applicable to the question of whether his *jury trial waiver* claim met that standard. The state's claim is that the petitioner never objected to the alleged failure of the trial court to canvass him regarding his right to a jury trial, and therefore he is barred from making that challenge in the habeas proceeding. The petitioner's argument regarding the uncertainty of his right to challenge a finding of not guilty by reason of mental disease or defect, therefore, is not applicable to the issue of whether he had procedurally defaulted on his jury trial waiver claim, nor would the argument have been persuasive had it been applicable—the right to a jury trial was well established at the time of the petitioner's trial." (Citation omitted; emphasis in original.) *Duperry* v. *Solnit,* supra, 261 Conn. 331–32.

Our Supreme Court disagreed with the petitioner's alternate basis for affirming Judge Spallone's decision, specifically, "that he was denied the effective assistance of counsel when he elected to plead not guilty by reason of mental disease or defect. Specifically, the petitioner contends that his attorney was constitutionally ineffective because he had failed to fully inform the petitioner of the legal and custodial consequences of such a plea, namely, the possibility that the petitioner's confinement could be extended beyond the maximum term of twenty-five years that was imposed by the trial court." Id., 333.

The following facts and procedural history were relevant to our Supreme Court's resolution of the petitioner's claim of ineffective assistance of counsel.

"Following his arrest, the petitioner met with O'Toole on several occasions. During the course of these meetings, O'Toole informed the petitioner that, essentially, he had three options. First, O'Toole informed the petitioner that he could plead not guilty and proceed to trial. O'Toole expressed to the petitioner his belief that this option posed a high risk of conviction in light of the fact that the petitioner had confessed to the crime. Second, O'Toole told the petitioner that he could plead guilty to the charges and proceed directly to sentencing. Under this option, O'Toole explained, the petitioner would likely face twelve years of imprisonment based upon the state's representation during the plea negotiations that it would recommend a sentence of thirty-five years imprisonment suspended after twelve years in exchange for a guilty plea. Finally, O'Toole informed the petitioner that he could plead not guilty and assert the affirmative defense of mental disease or defect. Pursuant to this last option, O'Toole explained, the petitioner could be confined in a psychiatric facility for a period of up to twenty-five years. O'Toole explained to the petitioner that he would be eligible for release under this option sooner than if he were to plead guilty, and therefore, he *might* spend less time in confinement. O'Toole did not inform the petitioner that any confinement imposed by [Judge Corrigan] under this option could be extended beyond the maximum term of twenty-five years. After explaining to the petitioner the manner in which his trial would proceed if he pleaded not guilty by reason of mental disease or defect, O'Toole ultimately recommended that option.

"In 1995, the petitioner filed his original petition for a writ of habeas corpus, alleging, inter alia, that he had been denied the effective assistance of counsel when he elected to plead not guilty by reason of mental disease or defect. [Judge Hodgson] rejected the petitioner's claim, finding that O'Toole had given the petitioner

all the information available to him concerning the petitioner's plea options. [Judge Hodgson] further found that O'Toole had not predicted when the petitioner would be released and that 'the petitioner's expectation that [the plea of not guilty by reason of mental disease or defect] would produce a quicker release was his own calculation, not based on any advice of counsel.' [Judge Hodgson] therefore concluded that the petitioner had not demonstrated that his counsel 'failed to perform in accordance with the standard applicable to attorneys representing criminal defendants.' " (Emphasis in original.) Id., 333–35.

"A criminal defendant has a sixth amendment right to the effective assistance of counsel at all critical stages of a criminal proceeding, including when deciding whether to accept a plea agreement or to pursue some other route. . . . In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court adopted a two part analysis for claims of ineffective assistance of counsel. Under *Strickland*, the petitioner must show that: (1) defense counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for defense counsel's deficient representation, the result of the proceeding would have been different. . . .

"In the present case, [Judge Hodgson] found that O'Toole had provided the petitioner with all the information available to him regarding the petitioner's plea options. The habeas court further found that the petitioner's belief that he would spend less time in confinement by pleading not guilty and pursuing a mental health defense rather than by pleading guilty was based on the petitioner's own conjecture and not on the advice of his attorney. The petitioner has made no argument that [Judge Hodgson's] factual determinations are clearly erroneous. We must assume, therefore, that

O'Toole provided the petitioner with all the information available to him regarding the petitioner's plea options. In light of this, it cannot be argued reasonably that O'Toole's representation of the petitioner here fell below an objective standard of reasonableness."[2] (Citations omitted.) *Duperry* v. *Solnit*, supra, 261 Conn. 335–36.

## II

## CURRENT FACTUAL AND PROCEDURAL HISTORY

On October 30, 2002, the petitioner filed the petition for a writ of habeas corpus at issue here. The relief he seeks is the restoration of the right to a direct appeal. In his petition, he alleged that he was deprived of his

[2] In her memorandum of decision, Judge Hodgson found, in part, the following: "[T]he petitioner interpreted [O'Toole's] analysis as offering a choice of getting out of Whiting Forensic [Division of Connecticut Valley Hospital] after two years or spending twelve years [in prison]. The petitioner did not advise . . . O'Toole that he construed the [mental disease or defect] defense as entailing a two year confinement, and . . . O'Toole was unaware of that expectation, having said only that the confinement at Whiting Forensic . . . 'could' be shorter than [in prison]. The petitioner had spent time in prison on prior offenses, and had also spent time at state mental institutions and had a basis for comparing the experiences involved in the choice of strategies.

"The petitioner testified that he had made the choice to pursue the [mental disease or defect] route rather than trial or the plea bargain. He did not testify that he had been urged or pressured by . . . O'Toole to make his choice; rather, he claims that . . . O'Toole did not inform him that the commitment to [the board] would be for more than two years.

"While . . . O'Toole testified that he had favored the [mental disease or defect] choice because he hoped that his client would benefit from treatment, he credibly denied predicting a two year confinement. The court finds that because the . . . [b]oard had only been established in 1985 and because it had acquired very little history that was available to defense lawyers, including . . . O'Toole, he had no basis to predict the length of the petitioner's confinement and did not do so. The court finds that the petitioner's testimony that . . . O'Toole at one point said the period 'could be zero to twenty-five years' is accurate and that his further testimony concerning a two year duration was something the petitioner himself estimated in his own thought processes, not a prediction made by . . . O'Toole." *DuPerry* v. *Solnit*, Superior Court, judicial district of Middlesex, Docket No. 75988 (January 8, 1998) (*Hodgson, J.*).

liberty without due process of law in violation of the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the constitution of Connecticut because (1) he did not knowingly and voluntarily waive his right to appeal as provided by General Statutes § 54-95 and (2) counsel failed to advise him of the right to appeal, thereby denying him effective assistance of counsel as required by the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. The respondent answered, alleging, in part, that the petitioner procedurally had defaulted his due process claim and that his claim of ineffective assistance of counsel had been raised in a prior petition and had been denied. In reply to the allegation of claim preclusion, the petitioner alleged that he could not be in procedural default and, even if he were, he could prove cause and prejudice. As to the allegation of a successive petition, the petitioner responded that the present petition for a writ of habeas corpus alleged a legal basis for ineffective assistance of counsel not raised in the prior petition.

In March, 2003, the petitioner filed a motion for summary judgment, arguing that there were no genuine issues of material fact that he had a right to appeal from the judgment of the trial court in the criminal proceeding, and that neither Judge Corrigan, nor the clerk nor O'Toole had advised him of the right to appeal and that he did not know within the twenty day appeal period that he had the right to appeal. In support of his motion, the petitioner filed his own affidavit and that of O'Toole. The petitioner attested that, at the time of his plea, neither O'Toole nor Judge Corrigan informed him of the right to appeal from his judgment of acquittal. O'Toole attested that he did not advise the petitioner of the right to appeal and that he did not hear Judge Corrigan or the clerk of the court tell the petitioner that he had the right to appeal. The respondent objected

to the motion for summary judgment, not on the basis of disputed facts, but as a matter of law. The court, *Dyer, J.,* denied the motion for summary judgment because there was no record of what Judge Corrigan had told the petitioner in December, 1988, and February, 1989. See footnote 1. The petitioner filed a motion to reargue, which Judge Dyer granted.

Following reargument, Judge Dyer again denied the petitioner's motion for summary judgment, concluding, however, that there were no genuine issues of material fact that the petitioner had not been advised of his right to appeal at the time he was committed to the custody of the board. Nonetheless, he concluded that the motion for summary judgment should be denied as a matter of law. Judge Dyer undertook a lengthy analysis of the claims presented in the petition, concluding with respect to the due process claim that the petitioner had not made a knowing and voluntary waiver of his right to appeal because O'Toole never discussed it with him.[3] Judge Dyer, however, ultimately concluded that the petitioner was in procedural default and that he could not satisfy the cause and prejudice standard of *Wainwright* v. *Sykes*, supra, 433 U.S. 90–91.

---

[3] The court, however, noted that "[t]he scope of a habeas court's authority to furnish a remedy as justice requires is limited to the constitutional deprivation found." *State* v. *Phidd*, 42 Conn. App. 17, 30, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997). It is well known that a criminal defendant has no constitutional right to appeal from his conviction. *Abney* v. *United States*, 431 U.S. 651, 656, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). That right is conferred by statute. *State* v. *James*, 261 Conn. 395, 404 n.12, 802 A.2d 820 (2002). The court also noted that there is no rule of practice or a statute providing that a defendant who pleads guilty to a crime must be informed by the court of the right to appeal from the judgment subsequently rendered. Practice Book § 43-30 provides in relevant part: "Where there has been a *conviction after a trial,* or where there has been an adverse decision upon an application for a writ of habeas corpus brought by or on behalf of one who has been convicted of a crime, it shall be the duty of the clerk of the court . . . to advise the defendant in writing of such rights as such defendant may have to an appeal . . . ." (Emphasis added.)

With respect to the grounds for appeal alleged by the petitioner, Judge Dyer concluded that two of the petitioner's alleged grounds for appeal were frivolous, i.e., that he was not informed that his commitment to the board could be extended beyond twenty-five years and that the court did not canvass him about the possible consequences of his plea of not guilty by reason of mental disease or defect. As to the third ground, which was that the petitioner did not knowingly and voluntarily waive the right to a jury trial, Judge Dyer concluded that it was not patently frivolous, but that there was no reason to believe that the petitioner would have wanted to appeal from the judgment of acquittal by means of mental disease or defect on that basis. The petitioner, therefore, had not proven the prejudice prong of the cause and prejudice standard. Judge Dyer denied the petitioner's motion for summary judgment.

In reaching his conclusions, Judge Dyer relied on the facts as noted by our Supreme Court in *Duperry* v. *Solnit*, supra, 261 Conn. 334. See part I. In particular, he relied on Judge Hodgson's finding that O'Toole had given the petitioner all of the information available concerning the plea and her finding that "the petitioner's expectation that [the plea of not guilty by reason of mental disease or defect] would produce a quicker release was his own calculation, not based on any advice of counsel." (Internal quotation marks omitted.) Id., 335. The petitioner has never claimed that Judge Hodgson's factual findings were clearly erroneous.

Judge Dyer also reasoned that it was improbable that O'Toole would have known that the petitioner rationally would have wanted to appeal from the judgment he had just sought and obtained. Had the petitioner filed an appeal and prevailed, he would have been exposed to a new trial and the criminal penalties he sought to avoid by pleading not guilty by means of mental disease or defect. Although Judge Dyer concluded that the

ground for appeal that the petitioner did not knowingly and voluntarily waive his right to a jury was not patently frivolous, he reasoned, in light of the particular circumstances of this case, that O'Toole reasonably would not have believed that the petitioner rationally would want to appeal on that basis and jeopardize the acquittal that he thought was in his best interest at the time.

Judge Dyer resolved the petitioner's claim of ineffective assistance of counsel pursuant to *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 761 A.2d 740 (2000). He concluded that, although one of the three grounds for filing a direct appeal was not frivolous, under the particular circumstances of this case, O'Toole had no reason to think that the petitioner rationally would have wanted to appeal in view of his decision to plead not guilty by reason of mental disease or defect rather than face a trial or accept a plea bargain with a minimum of twelve years in prison. For these reasons, Judge Dyer denied the petitioner's motion for summary judgment.

Thereafter, the respondent filed a motion for summary judgment on the basis of Judge Dyer's memorandum of decision. The court, *Silbert, J.*, granted the respondent's motion for summary judgment. The petitioner appealed to this court.

### III

### STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party

for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 405, 848 A.2d 1165 (2004). "Our review of the [habeas] court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction*, 87 Conn. App. 46, 48, 863 A.2d 754 (2005).

## IV

## DUE PROCESS CLAIM

The petitioner claims, in general,[4] that the court improperly concluded that he was not denied the right to due process of law pursuant to the federal and state constitutions[5] because he did not voluntarily and knowingly waive his right to appeal as conferred by § 54-95.[6] We disagree because the right to appeal is not

---

[4] The petitioner raised three due process claims on appeal: "1. Whether the habeas court erred in finding that the [petitioner] procedurally defaulted his first claim—that he was deprived of due process because he did not knowingly, voluntarily, and intelligently waive his right to appeal. 2. Whether the habeas court erred in finding that [the petitioner] had suffered no prejudice as a result of being deprived of his appellate rights despite finding that he had at least one non-frivolous ground for appeal. 3. Whether the habeas court erred in finding that [the petitioner's] first and third grounds for appeal were frivolous."

[5] The petitioner has not provided a separate analysis of his state constitutional claims and we, therefore, deem them abandoned. See *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 735 n.7, 779 A.2d 156 (2001); see also *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 17–18.

[6] General Statutes § 54-95 (a) provides in relevant part: "Any defendant in a criminal prosecution, aggrieved by any decision of the Superior Court, *upon the trial* thereof, or by any error apparent upon the record of such prosecution, may be relieved by appeal . . . in the same manner and with the same effect as in civil actions. . . ." (Emphasis added.)

For purposes of this appeal, we need not decide whether an acquittee, such as the petitioner, who was not tried, falls under the ambit of § 54-95. In addition, the petitioner has not made any claim that a violation § 54-95 alone is sufficient to grant a writ of habeas corpus.

constitutional in nature and by itself may not be raised in a petition for a writ of habeas corpus.

The court concluded that the petitioner did not waive an appeal voluntarily and knowingly because counsel never discussed the possibility of filing an appeal. But see footnote 3. "Habeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated." (Citations omitted; internal quotation marks omitted.) *Vincenzo* v. *Warden*, 26 Conn. App. 132, 137–38, 599 A.2d 31 (1991). "It is well settled that a criminal defendant does not have a constitutional right to an appeal; rather, that right exists solely by statute. . . . Put another way, although it is axiomatic that the state may not convict a defendant unless it provides to that defendant certain constitutional safeguards, the right to appeal is *not* one of those safeguards." (Citations omitted; emphasis in original.) *State* v. *Perkins*, 271 Conn. 218, 234, 856 A.2d 917 (2004).

The respondent has argued that the claimed constitutional violation is, in effect, the ineffective assistance of counsel, which is the claim the petitioner asserted in the second count of his petition for a writ of habeas corpus. We agree with the respondent and resolve that claim in part V.[7]

## V

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner's last claim on appeal is that the court improperly concluded that he was not denied the consti-

---

[7] Although we resolve the appeal on the basis of the petitioner's claim of ineffective assistance of counsel, we make clear that we offer no opinion

tutional right to the effective assistance of counsel because counsel did not apprise him of the right to appeal. We agree with the court that counsel's performance was reasonable under the circumstances.

The petitioner claims that, because O'Toole failed to consult with him about filing an appeal, O'Toole provided ineffective assistance of counsel. The facts and the law are to the contrary. "It is well settled that claims of ineffective assistance of counsel are governed by the United States Supreme Court's two-pronged test set forth in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness . . . and (2) that defense counsel's deficient performance prejudiced the defense. . . . In the realm of plea negotiations, in order to satisfy the second prong of *Strickland*, namely, proving actual harm, a defendant must show that, but for counsel's deficient performance, the outcome of the plea process would have been different.

"In the context of whether counsel has a duty to advise a defendant of his right to take an appeal, we are guided by *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 9 . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Turner*, 267 Conn. 414, 428–29, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004); see also *Hill* v. *Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (same two part standard enunciated in *Strickland* applies to claims arising from plea negotiation process).

as to the reasoning and conclusions of the habeas court with respect to the petitioner's due process claims. If the petitioner claims that he was denied due process because the court did not advise him of the right to appeal, new constitutional rules may not be asserted in collateral proceedings. See *Duperry* v. *Solnit*, supra, 261 Conn. 318.

Our Supreme Court decided *Ghant* in the wake of *Roe* v. *Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (clarifying applicable standard of review under federal constitution in determination of whether counsel is ineffective in failing to apprise defendant of right to appeal from guilty plea). A criminal defendant has a sixth amendment right to reasonably effective legal assistance. *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 8. The two part *Strickland* test "applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal. . . . [N]o particular set of detailed rules for counsel's challenged conduct can satisfactorily take account of the variety of circumstances faced by defense counsel. . . . Rather, courts must judge the reasonableness of counsel's challenged conduct on the facts of a particular case, viewed as of the time of counsel's conduct . . . and [j]udicial scrutiny of counsel's performance must be highly deferential . . . ." (Citation omitted; internal quotation marks omitted.) Id.

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking . . . whether counsel in fact consulted with the defendant about an appeal. We employ the term consult to [mean] . . . advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . . *If counsel has not consulted with the defendant,* the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. . . . And, while States are free to impose whatever specific rules they see fit to ensure that crimi-

nal defendants are well represented . . . the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." (Emphasis added; internal quotation marks omitted.) Id., 8–9. We are concerned with the second scenario here.

The United States Supreme Court has rejected "a bright line test that would require counsel *always* to consult with a defendant regarding an appeal." (Emphasis in original.) Id., 9. The court held "that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." (Internal quotation marks omitted.) Id., 9–10.

The defendant also must demonstrate prejudice. "[T]o show prejudice [when counsel fails to apprise a defendant of his or her appellate rights], a defendant must demonstrate that there is a reasonable probability

that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. . . . [W]hether a given defendant has made the requisite showing will turn on the facts of a particular case. . . . [E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." (Citation omitted; internal quotation marks omitted.) Id., 10.

The standard for determining whether an appeal is frivolous is well known. "[I]n the context of evaluating whether a court has abused its discretion in denying requests for certification or permission to appeal, [our Supreme Court has] applied the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). . . . The *Lozada* inquiry was established in order to determine whether a petitioner has made the requisite substantial showing of the denial of a federal right for the issuance of the required certificate of probable cause to appeal the denial of federal habeas relief . . . . In *Lozada*, the United States Supreme Court held that the required substantial showing was made if the petitioner demonstrate[s] *that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.* . . . In the federal courts, the probable cause certificate serves the same policy goal as the granting of permission or certification to appeal does in Connecticut, namely, to screen out frivolous appeals while still protecting the litigants' statutory right to appellate review of adverse determinations. . . .

"[Our Supreme Court] first applied the *Lozada* criteria in evaluating the frivolousness of an appeal in *Simms* v. *Warden*, [230 Conn. 608, 616, 646 A.2d 126 (1994)], in which [it] held that, in an appeal under Gen-

eral Statutes § 52-470 (b), which governs denials of requests for certification to appeal an adverse habeas corpus ruling, a petitioner will establish a clear abuse of discretion . . . if he can demonstrate the existence of one of the *Lozada* criteria . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Turner*, supra, 267 Conn. 430–31. "[W]hen a petitioner presents an issue on appeal that satisfies any one of the *Lozada* criteria, that petitioner ought to have that issue considered on appeal." Id., 431; see also *State* v. *James*, 261 Conn. 395, 405–10, 802 A.2d 820 (2002); *Seebeck* v. *State*, 246 Conn. 514, 534, 717 A.2d 1161 (1998).

Our Supreme Court has held that the *Lozada* criteria similarly should be used to evaluate the frivolousness of an appeal on a defendant's claim that counsel was ineffective for failing to consult with him regarding an appeal. *State* v. *Turner*, supra, 267 Conn. 431–32. "[I]f a defendant can demonstrate either that: (1) the issue is debatable among jurists of reason; (2) a court could resolve the issue in a different manner; or (3) the question is adequate to proceed further, then the defendant's appeal is not frivolous as a matter of law and, therefore, counsel has a constitutionally imposed duty to consult with the defendant about an appeal under *Ghant*. . . . A defendant, therefore, may prevail on a claim of ineffective assistance of counsel under *Ghant* if he can satisfy any one of the *Lozada* criteria. Once he has done so, he must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, *he would have timely appealed*." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 433. Here, the petitioner has failed to provide a record demonstrating that, had he been informed of the right to file an appeal, he timely would have done so.

We have reviewed extensively the factual and procedural history that gives rise to the petitioner's claims in this appeal. Given the particular circumstances of this case, we conclude that Judge Dyer properly concluded that, although the petitioner may have had one nonfrivolous ground for appeal, there is no evidence in the record that the petitioner was prejudiced by O'Toole's failure to advise him of the right to appeal or to file an appeal on behalf of the petitioner. If the petitioner's appellate rights were restored and he prevailed on appeal, that would not be the end of the matter. The petitioner has not proven that, following an appeal, he would be in a better position than he is in today. He again would be confronted with a trial on the crimes to which he had confessed. We cannot speculate, but doubt, whether the state would be willing to offer the petitioner a plea bargain favorable to him. If he asserted the defense of mental disease or defect and the jury were to acquit him on that basis, the petitioner could be committed to the custody of the board again. Or, if he did not assert that defense, the jury could find him guilty and he could be sentenced to a lengthy prison term.

More importantly, we conclude that, under the circumstances existing at the time the petitioner entered his plea, there is no way that O'Toole would have known that rationally the petitioner wanted to appeal. An appeal may have undone the petitioner's desire to be committed to the board rather than go to prison. Judge Hodgson, in the first habeas proceeding, found that, unbeknownst to O'Toole, the petitioner had decided that the board would release him in two years. The petitioner has not challenged that factual finding. Consequently, we cannot conclude that there was a rational basis on which the petitioner would have wanted to appeal from the judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.